E. O. MOFFATT et al. v. BOARD OF TRADE OF KANSAS CITY et al., Appellants.

Division Two, May 20, 1913.

1. **BOARD OF TRADE: Trial and Expulsion of Members: Resort to Courts: Legal Rights in Original Controversy.** The Supreme Court, upon an appeal from an injunction restraining a board of trade from proceeding to expel certain members because, it is alleged, they refused to submit a controversy to arbitration as directed by its constitution, is not concerned with the legal rights of the parties involved in the original controversy. That controversy merely evidenced the existence of a dispute within the purview of the constitution.

2. ————: ————: **Constitutional Powers of Directors: Ex Parte Action.** While plaintiffs in becoming members of the Board of Trade agreed to observe its constitution, rules and by-laws, and agreed to be subject to fine, suspension or expulsion in case they violated that agreement, yet they did not agree that the board of directors could exercise powers other than those conferred by the constitution, and while that board might try and punish members for failure to meet and discharge unquestioned obligations, it could not, *ex parte*, settle business controversies by resolution and on pain of expulsion exact compliance with such mandates.

Moffatt v. Board of Trade.

3. ————: ————: ————: **Estoppel.** Members of a board of trade are not estopped to stand upon the express provisions of their agreement, as set out in the constitution, rules and by-laws of the board, by the fact that they have induced others in different matters to yield obedience to unauthorized orders of the board of directors.

4. ————: ————: ————: **Circulating Slanderous Reports.** Allegations in a pleading in a suit in court, to-wit, that the board of directors of a board of trade has refused plaintiffs the right to arbitrate, that the members of the board were interested in like controversies and therefore were attempting to pass on their own cases, and that the board was acting outside its constitutional authority, do not fall within the constitutional prohibition against "circulating false or slanderous reports relative to the business affairs of other members or relative to the officers, appointees and committees of the association."

5. ————: ————: ————: **Protecting Member's Property Rights.** The property rights incident to membership in the Kansas City Board of Trade entitle a member to resist expulsion and to resort to the courts to enforce his rights to retain such membership in case the tribunals within the board attempt to oust him in disregard of the constitution—and that is so despite a covenant in the constitution not to bring suit against an officer of the board on account of any transaction therein.

6. ————: ————: **Resort to Courts: Injunction: Prematurely Sought.** The board of directors of the Kansas City Board of Trade has power to try members against whom complaints have been lodged, and, in case of conviction, has discretion to fine, suspend or expel the offender. It is also within the discretion of the board of directors whether a member shall be punished for the misconduct of the corporation which he represents. Therefore, where the complaints were filed before the board against the plaintiffs, for the failure of plaintiffs' corporation to pay for a car of grain, and the plaintiffs, before trial before the directors, applied to the courts for an injunction to prevent their expulsion, it is *held* that plaintiffs have no right to injunction, because their application is premature.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale*, Judge.

REVERSED.

*Kimbrough Stone* and *Frank Hagerman* for appellants.

(1) The nature of an organization like the Board of Trade. Tompkins v. Saffrey, L. R. 3 App. Cas. 213; Law & Customs of the Stock Exchange, by Melsheimer & Gardner (3 Ed. London, 1891), 98, 102; Clark v. Foss, 7 Biss. 547, 555; Bisbee and Simons Produce Exchanges, Pref. 6; White v. Brownell, 2 Daly, 329; Leech v. Harris, 2 Brewst. (Pa.) 571; In re Haebler, 149 N. Y. 414; American Com. Co. v. Live Stock Exchange, 143 Ill. 226; Dos Passon on Stock Exchange, 15; 23 Am. & Eng. Ency. Law, 749, 751; Seymour v. Bridge, 14 Q. B. D. 465; Belton v. Hatch, 109 N. Y. 593; Telegraph Co. v. Smith, 47 Hun, 505; Board of Trade v. Nelson, 162 Ill. 431; People v. Commercial Assn., 18 Abb. Pr. 271; Vaughn v. Herndon, 91 Tenn. 64; People v. Board of Trade, 80 Ill. 134; Grain & Stock Exchange v. Board of Trade, 15 Fed. 847; Evans v. Chamber of Commerce, 86 Minn. 448.   (2) There is a vast difference between the rights of a member of a voluntary, unincorporated institution, and those of a shareholder of a corporation.  1 Thompson on Corporations, sec. 846; Bacon on Benefit Societies, sec. 89; Niblack on Benefit Societies, secs. 30, 22, 23, 73, 74, 75; Kehenbeck v. Logeman, 10 Daly, 447; Ellerbe v. Faust, 119 Mo. 653; White v. Brownell, 2 Daly, 358; Lewis v. Wilson, 121 N. Y. 285; State v. Merchants' Exchange, 2 Mo. App. 96; State v. Odd Fellows, 8 Mo. App. 154; People v. Board of Trade, 80 Ill. 136; Albers v. Merchants' Exchange, 138 Mo. 140; Borgraefe v. Supreme Lodge, 22 Mo. App. 142; Warren v. Merchants' Exchange, 52 Mo. App. 167; Levy v. Magnolia Lodge, 110 Cal. 297; Greer, Mills & Co. v. Stoller, 77 Fed. 1.   (3) While there may be provisions that will be condemned as by-laws, yet, where the provision is part of the original contract, the rule as to the reasonableness or unreasonableness

as a by-law cuts no figure.  Niblack on Benefit Socie-
ties, sec. 23; Bacon on Benefit Societies, sec. 87; So-
ciety v. Vandyke, 2 Wharton, 309; Levy v. Magnolia
Lodge, 110 Cal. 297; Albers v. Merchants' Exchange,
138 Mo. 140.  (4)  There is power to expel, under sec-
tion 1, article 8 of the constitution, any member who
refuses to promptly and faithfully fulfill his business
obligations, and who refuses to equitably and satis-
factorily adjust and settle the same.  Farmer v. Board
of Trade, 78 Mo. App. 557; Dickinson v. Chamber of
Commerce, 29 Wis. 45; People v. Board of Trade, 45
Ill. 112; Albers v. Merchants' Exchange, 138 Mo. 140;
White v. Brownell, 2 Daly, 358; Lewis v. Wilson, 121
N. Y. 284; Payne v. Crawford, 97 Ala. 604; Greer,
Mills & Co. v. Stoller, 77 Fed. 1; In re Haebler, 149
N. Y. 414.  (5)  There was the right to try respond-
ents for dishonest practices and conduct detrimental
to the best interests of the association.  Farmer v.
Board of Trade, 78 Mo. App. 557; Gladish v. Bridge-
ford, 113 Mo. App. 726; Albers v. Merchants' Ex-
change, 138 Mo. 140; State ex rel. v. St. Louis Med.
Soc., 91 Mo. App. 76; Brandenburger v. Jefferson
Club, 88 Mo. App. 148; Lawson v. Hewel, 118 Cal.
613; Niblack Benefit Societies, sec. 75; People v.
Board of Trade, 80 Ill. 134; Baxter v. Board of Trade,
83 Ill. 146; Sturgis v. Board of Trade, 86 Ill. 441;
Pitcher v. Board of Trade, 121 Ill. 412; Board of
Trade v. Nelson, 162 Ill. 431; Greene v. Board of
Trade, 63 Ill. App. 446; In re Haebler, 149 N. Y. 414;
Osceola Tribe v. Schmidt, 57 Md. 106; Gregg v. Medi-
cal Society, 111 Mass. 193; Board of Trade v. Weare,
105 Ill. App. 299.  (6)  In any event, no injunction
should have been issued before the trial.  (7)  The
respondents have ceased to be members, by reason of
having relinquished any right to complain, by virtue
of section 11, article 5, of the constitution.  Grosve-
nor v. United Societies, 118 Mass. 78; 2 Parsons on
Contracts (8 Ed.), secs. 713, 417; Pierce v. Parker, 4

Met. 80; Fuller v. Railroad, 67 Md. 433; Donald v. Railroad, 93 Iowa, 284. (8) There was error in excluding the record of the Board of Directors of October 13, 1906. Farmer v. Board of Trade, 78 Mo. App. 557. (9) Vice of the decree in enjoining a trial until the claim against respondents was arbitrated. Bigelow on Estoppel (5 Ed.), 673, 689-690, 693-694; 11 Am. & Eng. Ency. Law (2 Ed.), 446; Railroad v. Howard, 13 How. 307; Railroad v. McCarthy, 96 U. S. 258; Daniels v. Tearney, 102 U. S. 415; Davis v. Walker, 156 U. S. 680; Brooks v. Laurent, 98 Fed. 647, 39 C. C. A. 209.

*Harkless, Crysler & Histed* for respondents.

(1) A voluntary association like a Board of Trade cannot transcend the limits of natural justice, the public policy of the State, or violate its own rules or deal capriciously with its members by fraudulent devices and pretenses. The rules and regulations constitute a contract between the members respectively of the board, and the board cannot over-ride, violate, or usurp its own rules in order to accomplish some ulterior motive, or be itself a party to the violation of its own rules. Hoeffner v. Grand Lodge, 41 Mo. App. 359; Mulroy v. Supreme Lodge, 28 Mo. App. 463. (2) The proceedings to expel a party from membership must be strictly pursued and the member cannot be expelled where the rules and regulations vest power in the Arbitration Committee to determine the dispute, until the committee decides, and the member refuses to thereafter comply with the committee's award and the board cannot arbitrarily usurp that power themselves. The rules and regulations having provided that all disputes of a mercantile or commercial character must be submitted to arbitration, is an exclusion of all other power or body to determine. (3) The board cannot put an end to member-

ship merely at the caprice of the directory. Farmer v. Board of Trade, 78 Mo. App. 564.

BLAIR, C.—This appeal is prosecuted from a decree of the circuit court of Jackson county making perpetual an injunction issued to restrain defendants, as officers and directors of the Board of Trade of Kansas City, from further pursuing proceedings alleged to have been instituted to expel plaintiffs from membership on that board.

The case was originally appealed to this court, and subsequently transferred on jurisdictional grounds to the Kansas City Court of Appeals, where it was heard and the judgment ordered affirmed in an opinion by Judge Johnson in which Judge Broaddus concurred and from which Judge Ellison dissented stating he entertained a different view of the facts and deemed the opinion in conflict with certain decisions of this court. The case was then transferred here, in due time docketed, and, after several continuances by agreement of the parties, the record is submitted for judgment. Plaintiffs and defendants are members of the Board of Trade of Kansas City (hereafter referred to as the Board of Trade) a voluntary association whose declared objects are: "To maintain a board of trade; to promote uniformity in the customs and usages of merchants; to inculcate principles of justice and equity in business; to facilitate the speedy adjustment of business disputes; to inspire confidence in the business methods and integrity of the parties hereto; to collect and disseminate valuable commercial and economic information, and generally secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits, and to promote the general welfare of Kansas City."

Plaintiffs were officers and directors of the Moffatt Commission Company (hereafter referred to as the Moffatt Co.), and at all times herein mentioned

there was in force a provision of the constitution of the Board of Trade to the effect that all provisions of the by-laws and constitution relative to arbitration, settlement and adjustment of claim should "apply to firms and corporations, so that each member of the Board of Trade, who is a member of a co-partnership, or officer, director or stockholder of a corporation shall be required to see to it that the same proceedings shall be had as to the debts or claims of such partnerships or corporation as is required as to his own debts or claims, and his membership shall, in the discretion of the directors, be subject to like fines, suspensions and penalties for the default of his firm or corporation as it would be for his individual acts."

The proceedings to expel plaintiffs were initiated by Goffe, Lucas & Carkener, partners and members of the Board of Trade, who claimed plaintiffs owed them for a car of grain destroyed by high water after, as they contended, delivery had been made. Plaintiffs denied all liability. The sale occurred, if at all, on May 29, and the car in question and some eight hundred others belonging to various owners, and similarly situated with respect to the title to the grain they contained, were caught in an extraordinary flood and all the grain in them destroyed.

On June 5 the board of directors of the Board of Trade adopted the following:

"Resolved that after mature consideration and after taking legal advice, it is the sense of this directory that on all sales of track grain and grain products, the title passed at the time the sale was made and the ticket passed."

This was the exact question then in dispute between the Moffatt Co. and Goffe, Lucas & Carkener, plaintiffs maintaining the negative thereof.

On June 8, Goffe, Lucas & Carkener by letter requested the board of directors of the Board of Trade to take up the question of the Moffatt Company's in-

debtedness to them and order payment if they were entitled to the money claimed. On the same date the directors took up this matter, and plaintiff Moffatt appeared and questioned the right of the board of directors to decide the controversy, and, further, declared he did not believe that the board of directors or an arbitration committee composed of Board of Trade members were competent to sit in cases arising from the destruction of property caused by the recent flood, stating that he doubted "if there is one member of either of these committees that is not interested" in some such case.

The board of directors, however, promptly took jurisdiction of the matter and ordered the Moffatt Company to pay. This that company, through plaintiffs, refused to do. Of this refusal Goffe, Lucas & Carkener advised the board of directors and the latter issued a citation to plaintiff Moffatt to appear June 15 to answer the charge of violating section 1 of article 8, of the constitution of the Board of Trade. The hearing was continued to June 23 and on the 21st this suit was commenced. On July 2 a more formal complaint was filed by Goffe, Lucas & Carkener against each of the plaintiffs, charging each with (1) violating the board of directors' order to pay Goffe, Lucas & Carkener for the car of grain, (2) failing to request a submission to arbitration and falsely alleging in the petition in this case that he had been denied the right to arbitrate and that the board was threatening to suspend or expel him, (3) utilizing the resolution of June 5 to compel payment from others but refusing to abide by it himself, (4) procuring orders from the board requiring payment to them and then falsely alleging the board had no power to make such an order and (5) violating section 2 of article 5, of the constitution, etc., of the Board of Trade by filing this suit.

October 13, 1903, these complaints were amended so as to specify that by reason of the several things charged plaintiffs had violated section 2 of article 5, sections 1 and 2 of article 8, and the amendment of December 2, 1901, to article 11 of the constitution, rules and regulations of the Board of Trade. Upon the filing of the first amended complaint against Moffatt the board of directors adopted the following resolution:

"Whereas, written complaint (a copy of which is annexed to this resolution) has been this day filed against E. O. Moffatt.

"Therefore, be it resolved, that, in order to avoid any misunderstanding of the purpose of this body, the same shall be treated and considered as the complaint upon which the said Moffatt shall be tried and that he be cited, in accordance with the rules, to appear for trial as soon as it is ascertained that no injunction prevents this body from proceeding to try him for the offenses charged, or if an injunction does so interfere then the trial shall take place as soon as notice can be served after the injunction is modified or dissolved, it being the intention, while obeying any injunction, to respectfully insist to the courts that this body has the right to try Mr. Moffatt and determine whether he has violated the constitution, rules and regulations."

A similar resolution applying to the complaint against Aylesworth was adopted at the same time, and upon the filing of the second amended complaints in October the board of directors readopted these resolutions, making them apply to the complaints as amended.

On the folowing day the answer was filed.

The amendment of December 2, 1901, referred to in the complaint, related to the responsibility of members of the Board of Trade for the acts of firms and corporations with which they were connected and is set out, in substance, above.

Sections 1 and 2 of article 8 of the constitution, so far as pertinent, read as follows:

"Section 1. Every person admitted to the privileges of this association shall promptly and faithfully comply with and fulfil all business obligations into which he may enter, either with other members of the association or with other parties, and shall, equitably and satisfactorily, adjust and settle the same. He shall also submit all disputes of a financial, mercantile or commercial character, connected with or arising from any matter referred to in this constitution and the rules and regulations of this association, whether with other members of this association, or with other parties, when such other parties assent thereto, to the arbitration of the committees of arbitration and appeals, and promptly and faithfully perform the awards thereof; and he shall faithfully observe and obey all the rules and regulations of this association, whether adopted by the association or by the board of directors.

"Section 2. . . . Nor shall any member be guilty of making or circulating any false or slanderous reports relative to the business affairs of other members, or relative to the officers, appointees and committees of the association, or the general management of the market . . . ."

Section 2 of article 5 reads as follows:

"Whereas, in the past management of similar associations it has occurred that officers, directors and members of committees have been sued in damages because of acts done or omitted to be done by them officially, the result of which may be to deprive this association of the full and fearless services of competent and responsible parties, it is therefore covenanted and agreed by each and every person becoming or who may be admitted a member of this association as a consideration for being accorded such member-

ship . . . that he will not, directly or indirectly, in any manner or in any court or before any tribunal other than those provided by this association, make any complaint, claim or demand or institute any suit or other proceeding against any person based upon or claimed to arise from any act done or omitted to be done, any vote cast, resolution passed or order made by such person while acting as an officer, director or committeeman of this association, or pursuant to any order, resolution, or direction of any officer, director or committeeman of this association. Each and every member of this association and every such non-member and each and every other person who may be hereafter accorded the privileges of membership, or any of the privileges enumerated in this constitution, or in any rule or regulation of this association, or in any resolution, motion or other proceeding adopted or provided by this association or its directors, or by any officer or committeeman thereof, does, in consideration of the premises, covenant and obligate himself not to make any demand or claim any right of action against the members of this association or any one or more of them for any loss or injury sustained by him in the premises, or by reason of any action taken or act done in connection therewith, it being the intention to hereby release and discharge any and all such claims, demands and rights of action, without restriction, limitation or exception of any kind or character in any respect whatever. Should any person, whether member or non-member, nevertheless make any such claim or institute any such suit, each and all of the members hereof and each and every person hereafter admitted to membership, agrees and covenants to indemnify any member or other person, subjected to such claim or suit against any and all cost, damage or liability by reason of the premises, and to hold him harmless on account thereof. And the board of directors may enforce this agreement by assessment

made, as to which assessment no action further than a resolution of said board shall be necessary. Should any present or future member fail to keep this agreement or to pay any such assessment, he shall for that reason and by that act alone be deemed and taken by all persons and in all places to have resigned and surrendered his membership in this association, and all the privileges and immunities thereof or incident thereto, expressly including his interest in any property now or at any time hereafter belonging to or held for this association, or in which the same is interested.''

Other provisions of the constitution were to the effect that any member violating any of ''these by-laws or rules or any regulations adopted by the board of directors, or the association, shall be censured, fined, suspended or expelled at the discretion of the board of directors, after a full and fair hearing of all the facts presented in the case. At the option of the board of directors he shall be deemed by such violation or breach to have surrendered and resigned his membership in this body, and all the privileges or property interests, if any, pertaining thereto and resulting therefrom. But before the board of directors shall enter upon the consideration of any such violation, a formal complaint shall be filed with the secretary at least two business days prior to the day on which the case is to be heard. Said complaint may be made either by a member or by a non-member, and shall specify the member complained against, and the offense with which he is charged and shall cite the by-law, rule or regulation which it is alleged has been violated.''

The relevant provisions of the constitution concerning arbitration were that the committee of arbitration (provided for) should hear and determine all disputes of a financial, mercantile or commercial character and that:—

"All disputes, differences or disagreements of a financial, mercantile or commercial character, of the character aforesaid, among members of this association, or between members and other parties, when such others assent thereto, must and are hereby agreed to be submitted to the committee of arbitration for adjustment. The board of directors shall have power to determine whether any given demand or counter-demand is a proper one for arbitration, and their conclusion in the premises shall be final and not reviewable by the association or in any court. Any member who shall commence an action at law against another member in regular standing (unless by agreement between them, or under section three of this article), for any such dispute, difference or disagreement, before he shall offer to arbitrate the same, and the arbitration has been refused, shall be liable to suspension or expulsion, as the directors may determine; but if arbitration shall have been proposed and refused, then an action or actions at law may be commenced, and the members failing or refusing to arbitrate may be suspended or expelled as the board of directors may determine; provided, that in any case either party may appear before the board of directors, and upon such notice to the other party, if any, as the board may direct, the directors may order that an arbitration shall not be required, and upon such determination suits may be commenced by either party. . . ."

"Section 4. Any such member or other person desiring to submit a matter in controversy to the committee of arbitration, shall file with the secretary his complaint, stating therein the cause of action, and the demands claimed. In case the complainant is· a non-member, he shall also sign an agreement to abide by and comply with all the terms and provisions of this constitution, and all orders and .resolutions of the board of directors, and any committee of this as-

sociation concerning the arbitration of said demand, and of any counter-demand which the defendant may present. A copy of such complaint shall be served by the secretary on the opposite party, and if the party complained against shall fail to make answer in writing to such complaint within two business days after service of copy thereof as aforesaid, or if he shall refuse to sign the agreement hereinafter prescribed, he shall be deemed to have refused, and to have incurred the penalties of refusal to join in submission to arbitration. . . . When, from absence or disqualification of regular members, either the committee of arbitration or appeals cannot be formed, the parties in controversy shall be allowed to fill vacancies with any member or members of this association willing to serve (not being of the other committee or the board of directors) on whom they may agree; or if such parties are unwilling to submit their case to the committee of arbitration, they may choose three or more members (willing to serve and not being of the committee of appeals or board of directors) whom they may agree upon; such agreement, in either case, to be communicated to the secretary in writing, signed by all the parties in controversy. A majority award or finding of committees thus formed shall be made under the same rules and shall have the same effect as if made by the regular committees, respectively."

There were also provisions relating to sales of grain on track asserted by plaintiffs to be in conflict with the resolution passed by the board of directors June 5 and above set out.

Neither plaintiffs nor Goffe, Lucas & Carkener had requested an arbitration of the dispute between them and while the answer averred that Mr. Moffatt had "appeared before the board of directors and claimed that neither the board of directors nor any arbitration committee had power to consider or pass upon" that controversy there was no substantial evi-

dence of· any refusal to arbitrate, the affidavits of-
fered to show such refusal disclosing that Moffatt's
position was that the directors and members were
probably disqualified by reason of being interested
in controversies of like character. The conclusion of
the affiants that Moffatt refused to ˙submit to arbitra-
tion was drawn from this statement attributed to him.

The value of a membership on the Board of Trade
was alleged and shown to be from $2500 to $3000 and
each member also had an interest in a fund out of
which the sum of $1000 was paid to the estate of each
who died.

I. With the legal rights of the parties to the con-
troversy which gave origin to the complaint filed with
the board of directors we are˙ not con-

Controversy in Voluntary Association: Resort to Courts: Legal Rights in Original Controversy.

cerned. The only importance that con-
troversy has is that it evidenced the exis-
tence of a dispute which fell within the
purview of the provisions of the constitu-
tion of the Board of Trade relating to
the adjustment by arbitration of ''dis-
putes, differences and disagreements of a financial,
mercantile or commercial character'' between members.

II. While plaintiffs in becoming members of the
Board of Trade agreed to observe its constitution,·
rules and by-laws, and agreed to be subject

Power of Directors.

to fine, suspension or expulsion in case they
violated that agreement, yet they did not
agree that the board of directors could exercise pow-
ers other than those conferred by the constitution, and
while that board might try and punish members for
failure to meet and discharge unquestioned obliga-
tions, it could not, *ex parte,* settle business controver-
sies by resolution and on pain of expulsion exact com-

Arbitration.

pliance with such mandates. We agree
with the learned Court of Appeals that in·

case of a difference or disagreement "of a financial, mercantile or commercial character" between or among members of the Board of Trade the board of directors might, in a proper case, determine whether such difference or disagreement was under the rules a proper subject for arbitration and, *if so,* and the complainant demanded arbitration, then a refusal of the other party to arbitrate would subject him to fine, suspension or expulsion; and we also agree that if the controversy was held by the board of directors not to be a proper subject for arbitration, then that decision did not invest the board of directors with power to decide the matter but the parties might resort to the courts. Such is the plain effect of the constitutional provisions above set forth. The resolution of June 5 amounted to nothing more than a gratuitous expression of the opinion of the board of directors on a question of law and in no way affected plaintiffs' rights under the constitution of the Board

**No Refusal to Arbitrate.** of Trade or otherwise. The fact the board of directors had adopted that resolution gave no different color to the Moffatt Company's subsequent refusal to pay Goffe, Lucas & Carkener. The resolution being passed without authority, plaintiffs' refusal to take any cognizance of it was quite justifiable. The controversy in which they were involved with Goffe, Lucas & Carkener fell within the class of differences subject to arbitration. The board of directors could not, under the constitution of the Board of Trade, take it out of that class and then decide it themselves. The apparent effort to do so did not affect the situation. As previously stated there was no substantial evidence of a refusal by plaintiffs to arbitrate. In fact, no request for arbitration had been made by the complainant firm and until such request was made there was no opportunity afforded plaintiffs either to refuse or to accept arbitration. Section 4 of article 11 of the constitution of the Board of

Trade points out what shall be deemed a refusal to arbitrate and there is no pretense any proceedings were initiated under this section against plaintiffs. Clearly it was not plaintiffs' duty to move for an arbitration. They were satisfied with existing conditions. It was incumbent upon Goffe, Lucas & Carkener to institute arbitration proceedings if they desired to arbitrate and until they did institute them plaintiffs were justified in remaining passive.

III. So far as concerns the charge in the complaint that plaintiffs had availed themselves of the resolution of June 5th and of other direct orders of

**Estoppel.**

the board of directors in dealing with their own debtors, it is without substance. Plaintiffs are not estopped to stand upon the express provisions of their agreement, as set out in the constitution, rules and by-laws of the Board of Trade, by the fact that they have induced others in different matters to yield obedience to unauthorized orders of the board of directors. The question now is as to the right of the board of directors to usurp a power clearly denied by the instrument by which the board was created and then punish plaintiffs for opposing such usurpation. The language of the constitution in this· connection is unambiguous and plaintiffs' previous recognition of the board's unwarranted orders cannot change its meaning and enlarge the board's powers.

IV. The statements in the complaints to the effect that certain allegations in the petition in this case

**Constitution: Circulating False Reports.**

were violative of section 2 of article 8 of the constitution are unfounded. The allegations referred to were those to the effect (1) that plaintiffs had been refused the right to arbitrate, (2) that the board of directors were interested in controversies like that between plaintiffs and Goffe, Lucas & Carkener and

were attempting to pass on their own cases and (3) that the board of directors by adopting the resolution of June 5th acted outside their authority. These allegations do not fall within the prohibition against "circulating false or slanderous reports relative to the business affairs of other members or relative to the officers, appointees and committees of the association." They are allegations in the petition in this case. The language quoted from section 2 clearly does not include allegations in pleadings unless it is given an unusual meaning, for which there seems no reason or occasion.

V. Another ground of the complaints filed is that the filing of the present suit constitutes a violation of section 2 of article 5 of the constitution. Plaintiffs' property rights incident to their memberships entitle them to resist expulsion and to resort to the courts in order to enforce their right to retain such memberships in case the tribunals within the Board of Trade attempt to oust them in disregard of the provisions of the constitution of the Board—which is the agreement out of which spring plaintiffs' rights and the board of directors' powers. It would be singular if the institution of a suit to prevent the unjust and arbitrary termination of plaintiffs' memberships would itself work their termination. Such a construction of section 2 of article 5 would, in this case, nullify the constitutional provisions as to arbitration and enable the board of directors to nullify them in every case. Under such a construction the board of directors might expel a member without any reason and in case he attempted to restrain the enforcement of the order the very effort to do so would of itself produce the result he sought to avoid. If it is possible that members of a voluntary association could lawfully enter into an agreement of such an anomalous character, their intent to do so

*Protection of Property Rights.*

ought to appear very clearly from the language employed before they are held to have done so. Section 2 of article 5 seems designed to protect officers and members from personal liability for votes cast and acts done in official capacity and does not warrant a construction like that suggested in the complaints.

VI.  In consequence of the conclusions stated we agree with the learned Court of Appeals that some of the grounds of the complaints charge no offense for which plaintiffs could be expelled and the rest seem to be disproved by the evidence in this record.

The real question in the case is whether, in the circumstances, injunction will lie.  The complaints were filed by individual members of the Board of Trade and are not the result of official action. The board of directors is vested with power to try members against whom complaints have been lodged and, in case of a conviction, has discretion to fine, suspend or expel the offender. In this case there is still an additional contingency affecting some of the grounds of the complaints. Plaintiffs are proceeded against, in part, as the representatives of a corporation. The corporation, and not the plaintiffs, is alleged to owe Goffe, Lucas & Carkener. By virtue of the amendment of December 2, 1901, it is within the discretion of the board of directors whether plaintiffs shall be punished at all for the misconduct of the corporation they represent.

There is no suggestion that any constitutional provision plaintiffs are charged to have violated is immoral, unreasonable or contrary to the written law or public policy. By becoming members of the Board of Trade plaintiffs agreed to submit to trial by its board of directors in case complaint was lodged against them and while they might apply to the courts to restrain the enforcement of an order of expulsion arbitrarily

*Resort to Courts Held Premature.*

and unlawfully made, can they invoke the powers of equity to restrain proceedings in which even their conviction might not entail any punishment at all? The trial was not begun before this suit was filed. The fact that the complaints filed by Goffe, Lucas & Clarkener contained charges which constituted no offense at all under the constitution, rules and regulations of the Board of Trade and contained others the truth of which plaintiffs seem to have been able successfully to controvert on the trial in this case is certainly no evidence that the board of directors was, arbitrarily, about to convict plaintiffs thereon; but rather the contrary. The opinion of the board of directors on the question of title to the car of grain in dispute as that opinion was expressed in the resolution of June 5th is of no consequence since that question is one the board of directors would not be called upon to decide in trying plaintiffs upon the complaints filed. Can the court assume that the board of directors will hold that to be an offense which is not an offense, or declare that to be true which is disproved, simply because of statements in the complaints filed by Goffe, Lucas & Carkener? It is true there is evidence that the president of the board told Moffatt that unless the Moffatt Company paid the claim of Goffe, Lucas & Carkener he would have to take the consequences and true that Moffatt testified that from the action of the board of directors in passing the resolution of June 5th and subsequently ordering the Moffatt Company to pay he "inferred" he was in danger of expulsion; but these things have little or no tendency to foreshadow arbitrary, unfounded and unlawful action by the board upon the trial on the complaints. In the circumstances we think plaintiffs should have exhausted their remedies within the Board of Trade. It is not to be presumed in advance of the trial that they would have been unlawfully convicted, nor, if convicted, that they would have been punished at all for the default of the

Moffatt Company, nor that expulsion necessarily would have been the punishment inflicted. Copies of the charges filed and notice of the date of the hearing were given plaintiffs. The board had not indicated any intent to proceed *upon the hearing* in any way except in accordance with the constitution and rules in force. If plaintiffs are afforded a fair trial that is all they could ask. To that, by becoming members of the Board of Trade, they agreed to submit. If they are dealt with arbitrarily, convicted upon a wholly invalid charge or without evidence, then they can apply to the courts and the enforcement of the order then properly might be restrained. For a court of equity to take jurisdiction in advance of the hearing, in the circumstances of this case, amounts to permitting plaintiffs to take a change of venue from the board of directors to the circuit court of Jackson county. Courts have no power to usurp the function of the tribunals of associations like the Board of Trade and can interfere only when those tribunals proceed without evidence or in bad faith or violate a valid part of the constitution and rules in dealing with a member or attempt to enforce against him, to his injury, invalid provisions thereof. The proceeding had not reached either stage when this suit was instituted. Unless it is to be held that whenever one member of a voluntary association files against another charges which are untrue or insufficient to support conviction equity may intervene, this judgment is wrong. To so hold would mean that the member proceeded against is to be permitted, in practical effect, to demur in the circuit court to charges filed against him in a tribunal of the association and demur there to evidence before it is offered before the board of directors.

This is not a case in which adverse action by the board of directors would entail such immediate loss to plaintiffs that an injunction promptly applied for, in case of their unlawful conviction, would not preserve

all their substantial rights and, consequently, cases involving questions of that kind and cases in which some trial committee, upon whose decision expulsion follows as a matter of course in the absence of additional affirmative action, has acted upon a complaint, are not in point. The cases cited in the briefs of counsel furnish ample authority for the conclusion reached, which is that the judgment ought to be reversed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. Al of the judges concur.