STATE of Missouri ex rel. NATIONAL JUN-
IOR COLLEGE ATHLETIC ASSOCIA-
TION, a not-for-profit corporation, and
Robert Sechrest, Relators,

v.

Drew W. LUTEN, Jr., Judge Division No. 10,
Circuit Court of St. Louis County,
Respondent.

No. 35137.

Missouri Court of Appeals,
St. Louis District.

March 6, 1973.

Lewis, Rice, Tucker, Allen & Chubb, Robert S. Allen, Kathianne Knaup, John Emde, St. Louis, representing JCD and Ron Havemann.

Richard Boardman, St. Louis, for respondent.

SMITH, Presiding Judge.

In this mandamus action, we issued our peremptory writ immediately after oral argument with this opinion to follow.

The National Junior College Athletic Association (hereinafter NJCAA) is a not-for-profit corporation which controls the scheduling and playing of inter-collegiate athletics among its member schools. In 1971–72 it had 513 member schools who agree to "supervise and to control athletics sponsored by this corporation so that they will be administered in accordance with the eligibility rules . . . set forth in the . . . By Laws." Among its functions it issues and enforces rules relating to the eligibility of students at its member schools to participate in inter-collegiate athletics. These rules constitute Article V of the NJCAA by laws. Robert Sechrest is the regional director of the NJCAA region in which St. Louis is located.

Warren Wynn is a student at Forest Park Community College in St. Louis. Forest Park is a facility of The Junior College District of St. Louis—St. Louis County which is a member of the NJCAA. Ron Havemann is the athletic chairman of Forest Park. Wynn brought an action against NJCAA, Sechrest, the Junior College District and Havemann seeking declaratory relief and an injunction. He alleged that the NJCAA, acting through its Executive Committee, had ruled him ineligible to play basketball for Forest Park during the 1972–73 season. His petition alleged that the defendants "acting individually and in concert, have misinterpreted the eligibility rules of the NJCAA, have wrongfully forbidden the plaintiff to play . . . thereby breaking the contract . . . ." between NJCAA and its member schools of which plaintiff alleges he is a third party beneficiary.

Following an evidentiary hearing the trial court entered its findings of fact, conclusions of law, and injunctive decree enjoining the Junior College District and Havemann from refusing to allow Wynn to participate in inter-collegiate basketball "on the grounds of eligibility." NJCAA and Sechrest were enjoined from refusing to allow the plaintiff and the Forest Park basketball team to compete with member schools, on the ground of plaintiff's ineligibility, and from forfeiting any games played by Forest Park in which plaintiff "may or may not have participated . . . ."

Sechrest and the NJCAA filed a motion for new trial and to set aside and dissolve the injunction. After argument on that motion Wynn sought and received permission to amend his petition by interlineation to allege that relators "arbitrarily and capriciously misinterpreted" NJCAA's eligibility rules. Plaintiff also filed a motion to amend the Findings of Fact and Conclusions of Law to rule that the decision of the NJCAA was "arbitrary and capricious." This motion was granted and the court entered new findings of fact and conclusions of law that "The provisions of Article 5, Section 5(a) of the by-laws of the NJCAA as applied to the admitted facts of this case are arbitrary and capricious, and said provisions as applied to the particular and peculiar facts of this case are without force and effect." Relators' application for prohibition or mandamus followed and we issued our alternative writ of mandamus to set aside the injunction. Section 5(a) of Article V of the NJCAA rules is set forth in the margin.[1] We also

---

1. "a. If a student enrolls in and attends one class, or participates in a regularly scheduled athletic contest prior to attending class, at any junior college and transfers at any time to another junior college, he shall be ineligible for competition until he has served a probationary period of one full academic year at the junior college to which he transfers. Such a student shall be immediately eligible, however, without serving the probationary period, if he transfers from a junior college that does not have an intercollegiate athletic program or from a junior college

set forth part of Section 1 of that same article for reasons which will become apparent.[2]

The facts upon which the NJCAA made its decision are undisputed. Wynn was a basketball player at Northwest High School in St. Louis. Following high school he enrolled in, attended, and carried a full course load in a junior college in Iowa. During his attendance at that school Wynn was ineligible to play basketball because he was two credits short of having graduated from high school and had not taken a high school equivalency test. Under Section 1 of the Rules this rendered him ineligible. Wynn attended the Iowa school for the fall semester of 1971 and part of the spring semester of 1972 until April when he voluntarily withdrew in good standing. He then passed the Missouri high school equivalency examination and in the fall of 1972 enrolled at Forest Park as a full-time student. Havemann requested a ruling from the NJCAA as to Wynn's eligibility in view of the one year layout provision regarding transfer students. (See § 5(a) of the rules, *supra*.) The Commissioner of Eligibility ruled Wynn eligible. On appeal this was reversed by the Executive Committee. Upon reconsideration that decision was reaffirmed. Wynn then requested a further reconsideration which was granted. Wynn and his attorney appeared before the full Executive Committee and once again that Committee ruled Wynn ineligible. NJCAA rules provide that the decisions of the Executive Committee concerning eligibility "shall be final." Wynn then brought suit.

■ It should be noted that certain contentions have not been made by Wynn nor by respondent. There is no contention that Wynn has not been afforded an adequate hearing and procedural due process. In fact, in the respondent's return it is admitted that Wynn was not denied any procedural rights. It is further admitted "that all parties acted in good faith." It is also clear that neither Wynn nor respondent takes the position that § 5(a) is on its face void, illegal, arbitrary or capricious. Respondent found (and it is obvious from a reading of that section) that 5(a) is intended to preclude the "raiding" of athletic talent by a member school from another member school. It is also apparent that the NJCAA has adopted a rule which obviates the need of determining the elusive fact of "raiding" in passing on questions of eligibility. The rule is suitable for the purpose intended and is within the power of the Association to enact. It is not, nor is it contended to be, illegal or against public policy.

■ Wynn and respondent attack the decision of the Executive Committee as being a misinterpretation of the rules. The construction they place upon the rule is that it applies only if the "student" who

that has discontinued a particular sport, or withdraws from a junior college within ten (10) calendar days, after the first scheduled day of classes in his first term of attendance and enrolls at the first possible opportunity in the junior college within his home district or county, or is required to transfer because of reasons beyond his control; providing he meets the requirements of the Rules of Eligibility of the NJCAA.

NOTE: A student transferring from a junior college that has discontinued a particular sport, may only compete in that particular sport in the junior college to which he transfers."

2. "Section 1. In order for a student to qualify for participation in the athletic activities sponsored by the National Junior College Athletic Association, or a member college of this Association, the following requirements must be fulfilled:

a. An entering freshman enrolling for his first term in college must be a high school graduate or its equivalent and carry as a regularly enrolled student at least ten (10) hours of college work as listed in the official catalog of the Junior College in which he enrolls.

NOTE: For the purposes of this Section, 'equivalent' shall include a high school equivalency diploma or being awarded a certificate or diploma signifying the successful passing of an officially recognized and authenticated national test, such as the General Education Development Test."

transfers was one who was eligible to participate in athletics under Section 1(a) while attending the school from which he transferred. Reduced to its simplest terms this is merely a contention that Wynn and respondent interpret the provisions of Rule 5(a) differently than does the Executive Committee. The addition of the epithets "arbitrarily and capriciously" does not enlarge this contention, particularly here where the good faith and procedural fairness of the NJCAA is admitted.

The power of a court to review the quasi-judicial actions of a voluntary association is extremely limited. It is limited to determining: (1) whether there are inconsistencies between the association's charter and by-laws and any action taken in respect to them (State v. Petry, Mo. App., 397 S.W.2d 1 (1965)); (2) whether the member has been treated unfairly, i. e.: denied notice, hearing, and an opportunity to defend himself; (Junkins v. Local Union No. 6313, 241 Mo.App. 1029, 271 S.W.2d 71 (1954) [4, 5]); (3) whether the association undertakings were prompted by malice, fraud or collusion, (Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374 (1940) [15–17]); and, (4) whether the charter or by-laws contravene public policy or law, (Junkins v. Local Union No. 6313, *supra*, [8–10]).

In Moffatt v. Board of Trade of Kansas City, 250 Mo. 168, 157 S.W. 579 (1913), the court said: "Courts have no power to usurp the function of the tribunals of associations like the board of trade, and can interfere only when those tribunals proceed *without evidence or in bad faith or violate a valid part of the constitution and rules in dealing* with a member, or attempt to enforce against him, to his injury, invalid provisions thereof." [7].

It is only upon the clearest showing that the rules have been violated by a decision of the association's tribunal that courts should permit their jurisdiction to be invoked. State v. Petry, *supra,* [10]; Junkins v. Local Union No. 6313, *supra,* [3];

Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38 (1963).

We are unable here to find any basis upon which the Circuit Court could exercise jurisdiction to enjoin adherence to the NJCAA decision. There has been no lack of procedural due process, no indication of malice, fraud or collusion and no contention that the rules or interpretation of them is against public policy or law. We are also unable to conclude that the decision is clearly contrary to the rules of the association. At most, the court's findings and conclusions demonstrate a different interpretation of Section 5(a) than that placed upon the section by the NJCAA. But nowhere do we find any indication that the interpretation of the NJCAA is unreasonable. That interpretation is certainly a permissible one. The interpretation being a reasonable and permissible one, and, no other basis for the court's interference being present, the trial court lacked the jurisdiction to enjoin the implementation of the NJCAA ruling. Robinson v. Illinois High School Association, *supra;* State ex rel. Indiana High School Athletic Association v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250 (1959).

■ Mandamus is an appropriate remedy to compel the undoing of a judicial act done without jurisdiction. State v. McDonnell, Mo., 426 S.W.2d 11 (1968) [4]. Normally mandamus does not lie if other adequate remedies are available. Here there is no other adequate remedy. By the time an appeal can be processed Forest Park will have utilized (as required by the court order) the skills of Wynn. The quashing of the injunction at that time would result in forfeitures of games, possibly affect tournament results, and generally confuse the relators' basketball picture nationally.

Our alternative writ is made peremptory.

DOWD, C. J., and SIMEONE, CLEMENS, and KELLY, JJ., concur.