STATE of Missouri ex rel. MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, a voluntary, not-for-profit, unincorporated association, by Irvin A. Keller, as Executive Secretary, et al., Relators,

v.

The Honorable Fred E. SCHOENLAUB, Judge, Division No. 2, Circuit Court of Buchanan County, State of Missouri, Respondent.

No. 58477.

Supreme Court of Missouri, En Banc.

April 8, 1974.

J. Robert Tull, Columbia, for relators.

Philip Eveloff, St. Joseph, for respondent.

HOLMAN, Judge.

Original proceeding in prohibition. The relators are the Missouri State High School Activities Association and the individual members of its Board of Control. The respondent is one of the Circuit Judges of Buchanan County. The relators seek to prohibit respondent from proceeding further in an injunction suit filed by Gary E. Dydell and Stephen M. Smith (hereinafter referred to as "plaintiffs") against the members of the Board of Control of relator association and the School District of St. Joseph. That suit seeks to restrain defendants from enforcing an association rule which would preclude plaintiffs from participating in athletic contests as students of Lafayette High School. The respondent granted an ex parte restraining order and later a temporary injunction. On October 23, 1973, we issued our provisional rule directing respondent to refrain from further proceedings in the aforementioned case including enforcement of the temporary injunction. We have concluded that the provisional rule should be made absolute.

The Missouri State High School Atheltic Association (hereinafter called the "Association") is a voluntary, unincorporated association of schools formed in 1926 for the purpose of setting standards for the regulation and supervision of interscholastic activities in Missouri high schools. The activities originally centered on athletics but at the present time also include speech, debate, and music. All of the senior high schools and 80% of the junior high schools in Missouri are members of the Association; a total of approximately 800 member schools. The Association is neither an agency of the State government nor mentioned in Missouri statutes but is recognized by and works with the Missouri State Department of Education.

The members of the Association are schools which are controlled by their respective boards of education. An eight-member Board of Control administers the Association's programs. The Association is governed by a constitution and by-laws, with amendments to the constitution re-

quiring a two-thirds vote of the member schools voting.

Every state has an organization similar to the M.S.H.S.A.A. All fifty state associations belong to a National Federation of State High School Associations which perform advisory and service functions.

The controversy in this case concerns various Articles of the Constitution of the Association.

Article V, Section 3(e) provides that in order for any student to represent his high school in interscholastic activities:

"He shall not have reached the age of 19 prior to September 1."

Article IV, Section 6(g) provides:

"The Board of Control shall be the authority to interpret the rules and provisions of the Constitution and By-Laws of the Association and shall be the final judge as to whether a violation has occurred."

Article V, Section 7 provides:

"The Board of Control is authorized to grant eligibility to a student in a case that is beyond the control of a student or his parents, which in the opinion of the Board involves undue hardship or an emergency and does not violate the intent of any of the standards of eligibility. Cases involving any choice on the part of the student or his parents shall not be heard under this section."

The Board of Control has interpreted the 19-year age requirement of Article V, Section 3(e) as being a fixed, invariable rule which is not subject to the hardship rule of Article V, Section 7. This conclusion is based on the view that any exception would violate the intent of the standard.

Gary E. Dydell attained the age of nineteen on July 17, 1973. He was afflicted with bronchial asthma and bronchitis during his kindergarten, elementary and high school years, causing him to miss in excess of 414 days of school. Because of his attendance record he was held back in school through no fault of his own or his parents.

Stephen M. Smith attained the age of nineteen on July 29, 1973. He missed approximately two years of school from August, 1962, to January, 1965, through no fault of his own or his parents. During this time his was incapacitated and immobilized in a full body cast suffering from Perthes Disease.

Gary E. Dydell did not appear before the Board of Control for a hearing. In his petition he alleged that it would be futile and useless to do so. Stephen M. Smith did appeal to the Board of Control and his case was heard on December 28–29, 1972, at which time his eligibility was denied.

The record indicates that if they had not been ruled ineligible both of the plaintiffs would have played as members of the Lafayette football team during the 1973 season and that Dydell was also skilled in wrestling and that Smith is a competent baseball player. They both say that they have been offered various college athletic scholarships but that such will be lost if they are not permitted to participate in athletics during their last year in high school.

In the injunction case plaintiffs contended: (1) that the 19-year age standard is unreasonable, unfair and arbitrary; (2) that, in refusing to recognize their cases as hardship cases under Article V, Section 7, the position of the Board of Control is unreasonable and arbitrary as applied to them; (3) that the 19-year age standard denies them due process of law; (4) that said rule constitutes a deprivation and taking of property contrary to law; and (5) that their rights to athletic scholarships will be jeopardized.

Relators here contend respondent court is without jurisdiction to restrain and enjoin them and the Association from carry-

ing out the rules and regulations of said Association for the following reasons:

(1) The power of a court to interfere in the internal affairs of a voluntary high school association is extremely limited and none of the exceptions apply in this case;

(2) A high school student's eligibility to participate in interscholastic athletics is a mere "privilege" and does not rise to the level of a constitutional, contract, property or pecuniary right;

(3) The mere speculative possibility that plaintiffs herein may acquire a football scholarship to a college or university does not rise to the level of a property, contract, or pecuniary right to the same.

It should be noted that certain contentions have not been made by plaintiffs. They do not contend: (1) that they were prohibited from attending Lafayette High School and pursuing the course of study and training available therein as provided by law, including physical education; (2) that they have not been afforded an adequate hearing and procedural due process, or (3) that the Board of Control has acted with malice, fraud, collusion, or bad faith.

 No case has been cited in which this court has had before it issues relating to the validity of eligibility rules of school associations. However, the St. Louis District of the Court of Appeals has recently decided two cases which involved such rules. We have carefully considered both of those cases and approve of the decisions therein. To a large extent, those cases are decisive of the issues here raised. They are also in accord with the great weight of authority in other jurisdictions.

State ex rel. National Jr. Col. Ath. Ass'n v. Luten, 492 S.W.2d 404, (Mo.App.1973) involved the athletic eligibility of a student who had transferred from one junior college to another. The association rule made him ineligible for one year after the transfer. The student filed an injunction suit in which he contended that the rule did not apply to him because he had not been eligible to participate in athletics at the first school. The trial court granted an injunction against enforcement of the rule as to him. In the mandamus action the court of appeals held that the circuit court did not have jurisdiction to issue the injunction. In so ruling the court stated that:

"The power of a court to review the quasi-judicial actions of a voluntary association is extremely limited. It is limited to determining: (1) whether there are inconsistencies between the association's charter and by-laws and any action taken in respect to them (State v. Petry, Mo.App., 397 S.W.2d 1 (1965)); (2) whether the member has been treated unfairly, i. e.: denied notice, hearing, and an opportunity to defend himself; (Junkins v. Local Union No. 6313, 241 Mo.App. 1029, 271 S.W.2d 71 (1954) [4, 5]); (3) whether the association undertakings were prompted by malice, fraud or collusion, (Robinson v. Nick, 235 Mo. App. 461, 136 S.W.2d 374 (1940) [15–17]); and, (4) whether the charter or by-laws contravene public policy or law, (Junkins v. Local Union No. 6313, supra, [8–10]).

"In Moffatt v. Board of Trade of Kansas City, 250 Mo. 168, 157 S.W. 579 (1913), the court said: 'Courts have no power to usurp the function of the tribunals of associations like the board of trade, and can interfere only when those tribunals proceed without evidence or in bad faith or violate a valid part of the constitution and rules in dealing with a member, or attempt to enforce against him, to his injury, invalid provisions thereof.' [7].

"It is only upon the clearest showing that the rules have been violated by a decision of the association's tribunal that courts should permit their jurisdiction to be invoked. State v. Petry, supra, [10]; Junkins v. Local Union No. 6313, supra, [3]; Robinson v. Illinois High School

Association, 45 Ill.App.2d 277, 195 N.E. 2d 38 (1963).

"We are unable here to find any basis upon which the Circuit Court could exercise jurisdiction to enjoin adherence to the NJCAA decision. There has been no lack of procedural due process, no indication of malice, fraud or collusion and no contention that the rules or interpretation of them is against public policy or law. We are also unable to conclude that the decision is clearly contrary to the rules of the association. At most, the court's findings and conclusions demonstrate a different interpretation of Section 5(a) than that placed upon the section by the NJCAA. But nowhere do we find any indication that the interpretation of the NJCAA is unreasonable." 492 S.W.2d 407.

Art Gaines Baseball Camp, Inc. v. Houston, 500 S.W.2d 735 (Mo.App.1973) involved the validity of a M.S.H.S.A.A. rule which provided that a student who attends a camp which specializes in one sport for more than two weeks during the summer would be ineligible in that particular sport during the following school year. The court of appeals affirmed the ruling of the trial court denying an injunction. The opinion states that:

"Along with entrusting the education of our children to teachers and administrators, we also entrust the control and supervision of the extracurricular activities incident to that education. Implicit in the responsibility for these activities is the power to make reasonable rules and regulations. We are dealing here with numerous schools who have voluntarily joined an association. As members of this association, they may, by majority vote, enact rules to govern their interaction. It is obvious that chaos would result without such rules. It is also obvious that the members are in the most advantageous position to appreciate the regulations under which they must act to achieve desired goals.

A court should not interfere with the enactment of those regulations as long as they are reasonable and do not infringe on public policy or law." 500 S.W.2d 740, 741.

In a case very similar to the instant one an Illinois court stated that:

"* * * A determination of the ineligibility of plaintiff to play interschool basketball was made by those in whom the constitution, by-laws, and rules of the Illinois High School Association vested the power and duty to make that determination.

"In the absence of any evidence of fraud or collusion, or that the defendants acted unreasonably, arbitrarily, or capriciously, the Athletic Association must be, under the authorities cited, permitted to enforce its rules and orders without interference by the courts." Robinson v. Illinois High School Association, 45 Ill. App.2d 277, 195 N.E.2d 38, 43 (1963).

To like effect see also, Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023 (1938), Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 [2], (Ala.1970), David v. Louisiana High School Athletic Ass'n, 244 So.2d 292 (La.App.1971), State v. Judges of Court of Common Pleas, 181 N.E.2d 261 (Ohio 1962), State v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250 (1959), Tennessee Secondary Sch. Athletic Ass'n. v. Cox, 221 Tenn. 164, 425 S.W.2d 597 (1968), and State ex rel. W. Va. Second. Sch. Act. Com'n v. Oakley, 164 S.E.2d 775 [5, 6] (W.Va.1968).

The foregoing establishes the general rule applicable in cases of this nature. We will now briefly discuss the reasons advanced by plaintiffs as to why that rule should not be applied in the determination of their suit.

■ Their first contention is that the age standard rule of the Association is unreasonable, arbitrary and unfair. We do not agree. The record indicates that the

age rule was adopted because of a belief by the member school officials that, (1) the use of older athletes constituted a danger to the health and safety of the younger ones, (2) many college stars were 19 years of age and individuals of that age were not the "usual high school age athlete" and (3) in some instances athletes had been advised to "lay out of school" in order to gain maturity, thus resulting in inequalities in competition.

It is said in Art Gaines, *supra,* that, " * * * To be unreasonable and arbitrary, this rule would have to be without a rational ground or justification." 500 S. W.2d 741. In Brown v. Wells, 288 Minn. 468, 181 N.W.2d 708, 710, 711, (1970) it is stated that, "In the final analysis, the court must determine if the board's action is so willful and unreasoning, without consideration of the facts and circumstances, and in such disregard of them as to be arbitrary and capricious. Where there is room for two opinions on the matter, such action is not 'arbitrary and capricious,' even though it may be believed that an erroneous conclusion has been reached."

There was a sound basis for the adoption of the rule in question and we see nothing to indicate that it is unreasonable, arbitrary, or unfair.

Plaintiffs also contend that the policy of the Board in refusing to consider any hardship cases as an exception to the age rule is unreasonable and arbitrary as applied to them. Again, we do not agree. If an athlete of more than 19 years of age were permitted to participate in athletic contests the fact that his may be a hardship case would in no manner diminish the dangers and other detrimental effects resulting from his participation. We do not think the Board acted unreasonably in taking the position that there should be no hardship exceptions to the application of the maximum age rule.

In none of the papers filed do plaintiffs attempt to point out the manner in which the rule denies them due process of law. Obviously, this bare allegation is without any merit and it will be disallowed without further discussion.

Finally, it is contended that the enforcement of the rule amounts to a deprivation of property of these students, i. e., possible athletic scholarships, contrary to law. We have not been cited to any case in which the courts of this state have considered this contention. We find, however, that this question has been decided by the courts of a number of other states. It is said in 68 Am.Jur.2d, Sec. 244, p. 569, that, "Participation in interscholastic athletics is not a property right but a privilege which the school, or a voluntary association whose rules a school agrees to follow, may withdraw if the student fails to qualify for the privilege, subject, of course, to the limitation that schools may not arbitrarily allow the privilege to some and not to others." In Marino v. Waters, 220 So.2d 802, 806, (La.App.1969) the court stated that ". . . this court may not interfere to protect a 'property right' as speculative and uncertain as the chance of receiving a college athletic scholarship. Further, it is the opinion of the Court, that the participation in interscholastic athletics is not a property right at all, but is a privilege which the school, or a voluntary association whose rules a school agrees to follow, may withdraw if the student fails to qualify for the privilege. There is of course the limitation that schools may not arbitrarily allow the privilege to some and not to others. But is is clearly not arbitrary for a school, or an association of schools, to establish rules based on rational reasons and to apply these rules uniformly." See, also, Tennessee Secondary Sch. Athletic Ass'n v. Cox, [4], *supra*; Scott v. Kilpatrick, [4], *supra*, and Estay v. LaFourche Parish School Board, 230 So.2d 443 [13] (La. App.1969).

It is our view, in accord with the foregoing authorities, that the enforcement of a valid eligibility rule which may have

deprived these students of athletic scholarships is not a taking of property "contrary to law".

For the reasons stated, the provisional rule, as heretofore indicated, should be made absolute. It is so ordered.

All concur.