JOHN M. JUNKINS, Respondent, v. LOCAL UNION No. 6313, COMMUNI-
CATION WORKERS OF AMERICA et al., Appellants.—271 S. W. 2nd
71.

Springfield Court of Appeals.  Opinion delivered August 9, 1954.

*Daniel J. Leary*, for Appellants.

*Stanley P. Clay,* for Respondent.

1032

*Daniel J. Leary,* for Appellants. (Reply)

McDOWELL, P. J.—This appeal is from a judgment and decree in favor of plaintiff in an action to enjoin defendants, a Labor

Union, its officers and certain of its members from charging, trying and disciplining a member, plaintiff.

The appeal was to the Supreme Court where it was held that that court was without jurisdiction to hear and determine the cause and it was ordered that it be transferred to the Springfield Court of Appeals.

Plaintiff's first amended petition alleges that the defendants "notwithstanding that plaintiff was in good standing, entered into a conspiracy and actuated by malice and by a determination to deprive this plaintiff of his property and legal rights by a corrupt, arbitrary and illegal use and construction of the powers vested in them by the by-laws and constitution of their organizations hereinbefore referred to, have made unjust, illegal and unfounded charges against this plaintiff and have undertaken to try, fine and otherwise punish this plaintiff in an unjust, illegal and oppressive manner."

Plaintiff further alleged "that on or about January 30, 1951, plaintiff was offered a job promotion by his employer, the Southwestern Bell Telephone Company. After accepting said position, charges were filed against this plaintiff for willfully failing to comply with the policies of Division No. 20 CWA and Local 3135 in regard to filling job vacancies by means of lateral moves on the part of management. A trial ensued and plaintiff was found guilty and fined $50.00. Plaintiff appealed to the International Executive Board of CWA-CIO which set aside the finding of the Court created by the Local. On November 10, 1951, defendant Thomas M. Wright again formally accused plaintiff of the same offense, i.e., accepting a job transfer by a lateral move on the part of his employer. Plaintiff has now been ordered to appear before the local union trial court on Friday, December 14, 1951, at 8:30 p.m. at the Union Hall, 319½ Main Street, Joplin, Missouri, to stand trial for said alleged and purported offense.

"Plaintiff further states that said purported trial will be unjust, illegal, oppressive and part and parcel of a complete conspiracy to injure the plaintiff and deprive him of personal and property rights in the following manner and respects:"

The petition specifically stated thirty-two grounds to support the allegations above set out. Among such grounds it was alleged:

"(ee) Plaintiff states that said purported, pretended and illegal threatened trial will be held not for the purpose of dispensing justice or enforcing any reasonable rule of the Union but rather to serve as a vehicle for defendants to exhibit their jealousy, malice and hatred to this plaintiff in that the result of said alleged trial has already been determined by the election of the present supposed arbiters and will be no trial in reality at all.

"(ff) Plaintiff states that Local No. 6313 in attempting to place plaintiff on trial for the offense hereinabove menioned is operating

outside the scope of its power and has no jurisdiction over the person of plaintiff or the subject matter of the alleged offense for the following reasons, to-wit;"* * *

"(2) Because if there were a policy against lateral moves, it was adopted after the alleged offense was committed and is therefore, ex post facto. * * *

"(14) Because in the contract between the defendant Local 6313 and the Southwestern Bell Telephone Company, lateral moves are permissible and said defendant is now estopped from breaching said contract by prohibiting its members from accepting lateral moves. * * *

"(19) Because plaintiff is threatened with an unending series of litigation by Local No. 6313 to which his further contest would be futile."

The first amended answer was a general denial of the allegations of the petition and set up the defense that plaintiff had not exhausted his remedies within the Union.

The evidence shows that plaintiff was employed by the Southwestern Bell Telephone Company, (hereinafter referred to as "Company") at Joplin, as a cable repair man engaged in outside work repairing cables and was of the age of 44 years; that he had been working for the Company 23 years; that he was a member of Local No. 3135, District No. 20, Communications Workers of America, CWA, affiliated with the CIO; that the membership of the Local was composed of employees of company engaged in the installation, maintenance and repair of telephone communication service. Plaintiff continued his work as cable repair man until February 1, 1951. About January 12, 1951, Company offered to transfer plaintiff to a position as "test board man". Such transfer is sometimes called a "lateral move". It was and is the position of defendant that such a transfer is a violation of the Union's policy when the transfer is effected by the employer-company and employee without conferring and co-operating with the Union with the view of affording all of Company's employees in the district the opportunity to "bid" for the transfer on the basis of seniority and ability.

It is the position of plaintiff that defendant, Union, entered into a 1950 Plant Agreement with Company for the benefit of plaintiff and the other members of the Union whereby under Section 5, Article XIV, such lateral move was permissible. Section 5 reads as follows:

"The Company shall retain the right to make intercompany or intracompany transfers into or within the Plant Craft Group where justified by personal reasons affecting the employee, and the Company will notify the Union of such transfers."

Plaintiff accepted the lateral transfer position without notice to the Union and without any conference between the employer and the Union, and without any submission of the position for bidding in

compliance with the alleged policy of the Union. Plaintiff took over his new duties as "test board man" February 1, 1951. On that date Thomas M. Wright, Vice-Chairman of Local No. 3135, filed complaint with the Local against plaintiff charging him with wilful failure to comply with the alleged policy of District No. 20, Local No. 3135.

On February 9, 1951, plaintiff was tried on said charge and fined by the Local Union Tribunal. Plaintiff appealed to the Executive Board of Division No. 20. Meanwhile, there was in progress a transition or change in the structural organization of the CWA, CIO, from a "three level" to a "two level" organization, the change to become effective April 2, 1951. The new change in effect abolished this Division as part of the union organization, and the Local of CWA on the stated date became responsive to the Executive Board of the International Union, CIO. In the re-organization the local union at Joplin was designated Local Union 6313. Inasmuch as the Divisional Executive Board was to be abolished April 2, 1951, plaintiff's appeal was forwarded to the International Union at Washington, which Board, upon review, set aside the decision of the local Tribunal and remanded the proceeding for a new trial.

It is contended by plaintiff that the Board of the International Union at Washington was invested with authority to affirm, or reverse, or reduce the penalty; that there was no authority to order a new trial as was done in the instant case.

At its next regular meeting after the remand, Local No. 6313 voted to again try plaintiff and, thereafter, on November 27, 1951, a second amended charge was filed, and a second trial was set for hearing before a local union Tribunal to be convened December 14, 1951. This trial was prevented by the present action filed December 7, 1951, in the Circuit Court of Jasper County, when a restraining order preventing the union proceedings was had.

The evidence shows that plaintiff accepted the transfer from a position as cable repairman, an outside job, to that of test board man, an inside job, because of the condition of his health. A Company supervisor advised the chairman of Local 3135 of the intended transfer. The evidence shows that the chairman of Local 3135 remonstrated with plaintiff for accepting such lateral move and that at a meeting of the local union January 26, 1951, plaintiff was told by defendant that his action, in accepting the lateral move, was a violation of union policy and that he was making himself liable for charges. Plaintiff became a member of Local 6313 and was a member of good standing at the time of the present charge.

In our opinion we will refer to appellants as defendants and to respondent as plaintiff.

In equity actions we review the record de novo and give such judgment as the trial court should have given. Section 512.160 R. S.

Mo. 1949; Handlan v. Handlan, Mo. Sup., 232 S. W. 2d 944; Milgram v. Jiffy Equipment Co., et al., Mo. Sup., 247 S. W. 2d 668, 671.

Defendants' first allegation of error is that the trial court erred in granting relief to plaintiff because plaintiff failed to exhaust his remedies within the defendant-labor union before seeking relief in the courts.

The general rule is that it is the duty of a member of án organization to exhaust his remedies by appeal, or otherwise, within the order, before resorting to the courts for redress. This rule is declared in Hall v. Morrin, et al., Mo. App., 293 S. W. 435, cited by defendants.

In 168 A.L.R., page 1462, 1463, the law is stated:

"While the courts will protect a member of an association against illegal expulsion, it has been said that the field of judicial interference with the actions of voluntary associations as to controversies between their members as to the method and manner in which the rights of membership may be maintained and continued is and should be a very narrow one, and its boundary should be maintained with the utmost care, so that only upon the clearest kind of showing, either that the constitution and rules are violated by the decisions of the tribunals set up by them, or that the remedies provided by the parties in their agreements for appeal from or review of, the decisions of their own constituted tribunals are nonexistent or unreasonable, should the courts permit their jurisdiction to be invoked. Oakes, Organized Labor & Industrial Conflicts, Sec. 61.

"By uniting with the union the member assents to and accepts the constitution and impliedly binds himself to abide by the decision of such board as that instrument provides for the determination of the disputes arising within the association. The decisions of such tribunals, when organized under the constitution and lawfully exercising their powers, are of a quasi-judicial character, and are no more subject to collateral attack for mere error than are the judgments of a court of law. The courts will look into the record to ascertain whether the disciplinary proceedings were pursuant to the constitution and bylaws of the association, and whether the proceedings were in good faith, whether the charges were substantial, and whether the member has had fair notice and opportunity to be heard; but will not substitute their judgment for that of the organization. * * *

"Courts do not sit in review of decisions of tribunals of a labor union in suspension or expulsion of a member in accordance with the constitution and rules of the union by its appropriate officers acting in good faith and in conformity to natural justice, even though it may appear that there has been an honest error of judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation. Snay v. Lovely (1931) 276 Mass. 159, 176 NE 791."

In Reed v. St. Louis S. W. R. Co., Mo. App., 95 S. W. 2d 887, 889, the law is stated:

" 'It is well settled that, where contracting parties either agree or are required by law to resort to a designated tribunal for the adjustment of controversies, they must exhaust such remedy before resorting to the courts for redress. * * *' " (See cases cited.) Koppal v. Transcontinental & Western Air, Inc., 199 Fed. 2d, 117, 122.

In 31 Am. Jur. page 856, Sec. 43, the law is stated:

"A labor union has the right to make and adopt reasonable rules and bylaws governing the conduct of its own members. So long as the bylaws of a union relate to matters in which no one except the association and its members is interested, and violate no right of a third person and no rule of public policy, they are valid. The articles of agreement of a labor union, whether called a constitution, charter, bylaws, or any other name, constitute a contract between the members which the courts will enforce, if not immoral or contrary to public policy or the law of the land. A rule of a labor union which violates a statute is, of course, illegal. Moreover, the obligations or pledges of members of a labor union on their initiation must be construed with reference to the declared purposes of the organization, and are binding only in so far as their purposes are lawful and are to be attained by lawful means.

"The statutes of some jurisdictions expressly authorize labor unions to make bylaws and regulations. But a statute providing that labor unions may devise and adopt ways and means to make their rules, regulations, bylaws, and resolutions effective does not sanction rules, regulations, bylaws, or resolutions to commit wrong, nor does it authorize interference with the constitutional rights of others."

In 31 Am. Jur., page 860, Sec. 55, the law is stated:

"While it has been observed that the function of a trade union is to increase the individual bargaining power by collective action, and thus to promote the common interest of its members, the functions of a labor union do, in fact, cover a wide range. It has been said that the purpose of a labor union is generally social and not commercial, and that its function is to induce employers to establish usages in reference to fair wages and working conditions. * * * Labor unions frequently fix wage scales and issue notices to employers that the wage scale established by the union is to be the basis of contracts to be made with its members. Workmen have, in some instances, delegated to the labor unions with which they are connected the right to select a superintendent, and the right to make contracts in their behalf. Inferred or implied powers of a voluntary, unincorporated labor union must rest upon some provision in its constitution, since it embodies the association's whole plan of existence."

In Robinson et al. v. Nick, et al., (Canavan et al., Interveners), Mo. App., 136 S. W. 2d 374, the question presented to the court was

whether plaintiffs were barred from seeking redress in court by reason of their admitted failure to have exhausted the remedies provided within the organization, that is, by an appeal to the general Executive Board, and, from it, to the convention of International Alliance. On page 387 of the opinion the court states this law:

"It is indeed a well settled principle of law that in cases involving the internal affairs of an association such as a trade union, where no distinct property right is directly involved, a member who has a grievance must exhaust whatever remedies are provided within the organization before he may ask the courts to interfere. This for the reason that the relation between the member and the association is contractual; and so long as the constitution, rules, and by-laws of the association, which constitute the contract, do not contravene the laws of the land, and the affairs of the association are conducted fairly and honestly, the courts will refuse to interfere upon the theory that the decisions of the tribunals set up within the association are binding and conclusive upon the member. *It is no less true, however, that where the association has not acted strictly within the scope of its powers; or where fraud, oppression, or bad faith is shown; or where it appears that an appeal within the organization would have been a vain and useless step, then the failure of the member to have availed himself of the remedies within the organization will not be a bar to his right to ask judicial interference.* Hall v. Morrin, Mo. App., 293 S. W. 435, 440, and cases cited; 63 C. J. 689, 699; 7 C. J. S. Associations, Sec. 34." (Emphasis ours.)

The question presented to the court under this assignment of error is, was plaintiff justified in seeking relief from the court without first exhausting administrative remedies provided by the Constitution and bylaws of the Union?

Plaintiff's petition alleges that the defendants, "Local 6313, the officers, executive committee and trial court, namely, Allen V. Ayres, Thomas M. Wright, David Chew, J. C. Sheldon, Jack Hurst, Howard Belk, Lloyd Piquard, Arthur Krieckhaus and George Fore, notwithstanding that plaintiff was in good standing, entered into a conspiracy and actuated by malice and by a determination to deprive this plaintiff of his property and legal rights by a corrupt, arbitrary and illegal use and construction of the powers vested in them by the by-laws and constitution of their organizations hereinbefore referred to, have made unjust, illegal and unfounded charges against this plaintiff and have undertaken to try, fine and otherwise punish this plaintiff in an unjust, illegal and oppressive manner."

The petition states that the action of the officers, the executive committee and trial court will not carry out the purposes for which defendant local 6313 was created but their actions would be a usurpation of power by them to oppress and unjustly and illegally deprive plaintiff of his properties by fining him and possibly depriving him of

fees and initiation fees paid by him to defendant-local and other property and legal rights.

Under these allegations plaintiff first offered evidence to show that there was no basis for the charge. It is admitted, in the evidence, that plaintiff was a member of defendant-local 6313, CWA, CIO, which was the successor to local 3135, under the new organization. Plaintiff had been employed by the Southwestern Bell Telephone Company for some 23 years and, at the time of the alleged lateral transfer, which defendant-union claimed violated its policy, was cable repairman doing outside work. In January, the Company offered to transfer plaintiff to an inside office job, "test board man". The Company told Mr. Ayres, an official of the union, of such offer. Mr. Ayres remonstrated with plaintiff about accepting this transfer and plaintiff was informed by the officers of local 3135 that if he did accept such transfer he would violate the policies of the union and would be subject to having charges filed against him. Plaintiff accepted the transfer February 1, 1951, and is now employed as test board man in the office.

We think the evidence is clear that the lateral transfer was in the same force group and did not increase the numerical size; that the transfer was accepted by plaintiff because of his age and health. The evidence shows that the work of cable repairman was outside work and had to be performed in all kinds of weather and that plaintiff was now 44 years of age and that the work of "test board man" was inside work.

Article XIV, Section 1 of the Plant Agreement provides:

"A vacancy, except when covered under Sections 4, 5, or 6 hereof, shall for the purpose of this Article be deemed to exist when (a) a Plant Craft position included under Force Group (1), (2), or (3), is vacated and where it is determined that such position is to be filled other than on a temporary basis or other than by transfer from within the same Force Group, or (b) when it is determined that the numerical size of a Force Group is to be increased other than on a temporary basis; * * * For the purpose of this Section each of the following shall be considered as a Force Group:

"(1) The total located Group 1 Craft force (excluding Cable Splicers' Helpers and Framemen) in a particular Exchange Operating Area within a Division.

"(2) The total located Group 2 Craft force in a particular Exchange Operating Area within a Division.

"(3) The total unlocated Group 1 Craft force (excluding Cable Splicers' Helpers) within a Division.

"Section 2. If and when a Vacancy exists as defined in Section 1 of this Article, the Company shall notify the Union of such fact at least 14 calendar days before the Vacancy be filled, other than on a temporary basis. Within 14 calendar days from the date of such notification the Company will accept for consideration from the Union a list of not more than five applicants for the position, such

applicants to be limited to Plant Craft employees located (or working in, if Unlocated Craft employees) in:

"(a) the Particular Operating Division involved, or

"(b) the Operating Area, if such Area contains no Operating Division. * * *

"Section 5. The Company shall retain the right to make intercompany or intracompany transfers into or within the Plant Craft group where justified by personal reasons affecting the employee, and the Company will notify the Union of such transfers. * * *

"Section 7. The decision of the Company on any of the matters under the foregoing Sections of this Article shall be controlling unless the Company is shown to have acted in bad faith. * * *"

By the terms of this agreement plaintiff was working in the same force group. There was no increase in the number of employees and, therefore, there was no vacancy. By the plain wording of the agreement between the union and the company, the company had the right to make the lateral transfer of plaintiff, which was an intracompany transfer within the Plant Craft Group and such transfer was not one which must be submitted to bids.

We think the evidence that plaintiff wanted to accept the position for health reasons met the contractual requirements that the same should be justified by personal reasons affecting the employee. The company did notify the officials of the union of the intended lateral transfer as required by section V of the Plant Agreement.

We think defendants admit that by the terms of the agreement, the company had the right to make such transfer without notice to the union and that plaintiff had the right to accept such transfer under such Plant Agreement.

On page 42 of defendants' brief, the following statement is made:

"We must make definitely certain that all parties understand that this case is between plaintiff Junkins as a member of the Union and the Union itself. The Southwestern Bell Telephone Company should not be involved in this case in any way. We reiterate that the existing plant agreement does not enter into the charges against Mr. Junkins. We have attempted to make clear from the beginning that certain types of lateral moves under certain conditions are permissible under the Plant Agreement. * * * However, the Union reserves the right to determine how it will handle its end of the Plant Agreement. The determination of the Union is just as binding upon plaintiff Junkins as it is upon every other member. The Court must remember there are many provisions which this labor union would desire to have incorporated in its Plant Agreement with the company, but which it cannot secure for economic reasons. All of the argument by plaintiff concerning his non-violation of the Plant Agreement is immaterial to this case. The Union never charged plaintiff Junkins with a violation of the Plant Agreement."

An examination of the record in this case substantiates our finding that plaintiff was authorized, under the Plant Agreement between the Union and the Company, to accept the lateral transfer in question. This court asked counsel for defendants if plaintiff had the right, under the contract between the Union and the Company, to accept the job transfer in question and counsel informed the court that he did.

The evidence also shows that other lateral transfers, similar to the one herein made, had been made by the company without charges being filed by the Union.

The policy of the Union claimed to have been violated was adopted in March, 1950, at a regular meeting of the Union by reading a letter from Mr. Al DiProspere, District Director, stating that the local had been in error by agreeing to lateral moves. There was some dispute as to the date of this letter and the trial court seemed to have found that the date had been changed.

In 31 Am. Jur. page 856, Sec. 43, the law is stated:

"A labor union has the right to make and adopt reasonable rules and bylaws governing the conduct of its own members. So long as the bylaws of a union relate to matters in which no one except the association and its members is interested, and violate no right of a third person and no rule of public policy, they are valid. The articles of agreement of a labor union, whether called a constitution, charter, bylaws, or any other name, constitute a contract between the members which the courts will enforce, if not immoral or contrary to public policy or the law of the land. * * * Moreover, the obligations or pledges of members of a labor union on their initiation must be construed with reference to the declared purposes of the organization, and are binding only in so far as their purposes are lawful and are to be attained by lawful means."

Under Article III of the Constitution of defendant-union, introduced as plaintiff's exhibit 25, entitled "Objects", it is stated:

"The objects of the union shall be:

"(a) To unite the workers within its jurisdiction in a single cohesive labor union for the purpose of collective effort;

"(b) To improve the conditions of the workers with respect to wages, hours, working conditions and other conditions of employment;
* * *

"(e) To do all things which may be necessary or proper to secure for the workers the enjoyment of their natural rights."

Under Article XVII, it is provided:

"Section 1 - - Bargaining Authority.

"(a) The Communications Workers of America shall be the collective bargaining representative of the members of the Union.

"(b) Collective bargaining within the established bargaining unit or units shall be conducted under the direction of the Executive Board of the International Union and all contracts or agreements entered into

shall be in the name of the International Union and bear the signature of approval of an authorized agent or representative of the International Union."

The contract in question is admitted to have been made as provided by the Constitution of the Union. Under the terms of the Constitution the Plant Agreement between the Union and the Company was made for the purpose of improving the working conditions and other conditions of employment of the members thereof. The policy of the union requiring plaintiff to refuse the benefits of a contract with the company expressly made for the benefit of the members thereof and for the benefit of the company, violates plaintiff's right and also violates the rights of a third party, the company, plaintiff's employer, and is, therefore, invalid under the law above stated.

We hold that such a policy which prevents the members of a union from carrying out a contract made for their benefit, in fact, breaches the contract with the company and such a policy would be against public policy and invalid. Robinson et al. v. Nick, et al., supra, page 387.

The trial court was justified in finding that in the filing of charges by the union through its officials against plaintiff for the violation of its policy, which prevented plaintiff from accepting the benefits of a contract made by such union for his benefit, was not conducting the affairs of such union fairly and honestly and that the prosecution of such a charge constitutes oppression and bad faith on the part of the union. Such charge was beyond the power of the union to make. Eversole v. La Combe, 231 P. 2d 945, 946; Hudson v. Cincinnati, etc. Ry. Co., 154 S. W. 47, 48, 49, (Ky.); Brooklyn Nat. L. Baseball Club v. Pasquel et al., 66 F. Sup. 117, 119, 120.

The next question presented to the court under this allegation of error is, did defendant-union act within the scope of its power when it voted to re-try plaintiff on the same charge that he was first tried upon?

The remedies provided within the organization are set out in the Union's Constitution, in evidence, as plaintiff's exhibit 25.

Article VII, entitled "Governing Authority", Section 1 reads:

"The affairs of the Union shall be governed by its membership in the following manner:

"(a) By the Convention as the highest governing authority of the Union, subject to the right of referendum of the membership;

"(b) By the Executive Board exercising the authority of the Convention between Conventions, in accordance with the Constitution and the mandates of the Convention, subject to the right of appeal to the Convention, the referendum and the recall. Except as provided in Article XIII, Section 6, the decisions of the Executive Board must be complied with before the right to appeal can be exercised and such decisions shall remain in effect until reversed or modified;

"(c) By the President as the principal executive officer of the Union, who shall have the authority to carry out the policies of the Union in accordance with the Constitution and the mandates of the Convention and the Executive Board, subject to the right of appeal to the Convention, the referendum and the recall;

"(d) By the Locals of the Union conducting their affairs in accordance with this Constitution and Local By-Laws and Rules which they may adopt so long as they do not contravene any provision of this Constitution."

Article XI, entitled "Districts" Section 1, provides:

"The Districts established under this Constitution shall be administrative units of the Union.

Article XIII, entitled "Locals" provides:

"Section 1 - - Charter.

"(a) A Local shall be a unit of the Union and shall be chartered by the Executive Board. * * *"

Section XIX, entitled "Charges Against Members", reads:

"Section 1 - - Specifications.

"Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts: * * *

"(c) Wilfully violating the Constitution of the Union, Local By-Laws or Rules; * * *"

Article XXI, under "Trials and Appeals - - General Membership and Officers of Locals."

"Section 1 - - Persons Subject to Trial.

"(a) Members of the Union, including Officers of Locals, shall be tried for any of the offenses listed in Article XIX as provided herein;

"(b) * * * The procedure for such trial shall be in conformity with the standards set forth in Sections 2, 3, and 4 of this Article.

"Section 2 - - Charges.

"(a) Charges made against a member of the Union or an officer of the Local shall be in writing, signed and sworn to by the accuser and filed with the recording officer of the Local of which the accused is a member. In the event the accused is such recording officer, the charges shall be filed with the President of the Local;

"(b) Charges must be submitted within sixty (60) days of the time the accuser becomes aware of the alleged offense;

"(c) Charges shall contain an allegation of the facts constituting the offense with which the accused is charged and the approximate date or dates said offense is alleged to have occurred.

"Section 3 - - Trials

"(a) The By-Laws or Rules of a Local shall specify the manner in which an accused person shall be tried and must conform with the following minimum standards:

"(1) A court, composed of not less than three or more than seven persons, who shall be members of the Local, not parties to the proceeding, shall be selected by the governing body of the Local. The court shall be bound to render a decision and impose a penalty without bias or prejudice, based on all the evidence presented;

"(2) A prosecutor, who is a member of the Local, shall be appointed by the governing body of the Local to assist the accuser in the trial and present evidence;

"(3) The trial shall be held speedily with due notice to the accused;

"(4) The accused shall have the right to select a member of the Local as counsel, the right to produce witnesses and present documentary evidence and to be heard on his own behalf. He shall have the opportunity to cross-examine witnesses;

"(5) All witnesses shall testify under oath;

"(6) Notice of the decision and penalty, if any, shall be given to the person charged within five (5) days after the close of the trial;

"(7) A faithful record of the proceedings shall be made;"

"Section 4 - - Appeals

"(a) A member or officer of a Local upon being found guilty by a court may appeal as provided in this Section:

"(1) Have the right to refer the matter to a membership meeting of the Local, within thirty (30) days after being found guilty by a court, which may affirm or reverse the decision or reduce the penalty;

"(2) Have the right to appeal from the final decision of the Local to the Executive Board of the Union within thirty (30) days after such final decision of the Local;

"(3) The appeal to the Executive Board of the Union shall be directed, in writing, to the Secretary-Treasurer of the Union, who shall obtain the record of the case. The Executive Board shall review the case and affirm or reverse the decision or reduce the penalty;

"(4) Have the right to appeal from the decision of the Executive Board of the Union to the next Convention by giving a notice of appeal in writing within thirty (30) days after the decision to the Secretary-Treasurer of the Union. If the Executive Board has failed to render a decision within thirty (30) days preceding the Convention, the accused may appeal directly to the Convention which may affirm or reverse the decision or reduce the penalty."

The by-laws of the CWA, CIO, Local 6313 were introduced into evidence as plaintiff's exhibit 27. Article VII, Section 1, of such by-laws provides that the affairs of the local shall be governed by the membership in accordance with the Constitution and policies of the Union.

Article XII of the by-laws provides that there shall be a local president, vice-president, secretary-treasurer who shall have the responsibility for the prosecution of grievances to the Grievance Committee.

Article XVI provides that any accused person shall be tried under the provisions of Article XXI of the Union Constitution and that appeals will be allowed as provided in Article XXI, Section 4, of the Constitution.

Section 4 under said article provides that a trial court of the local shall be comprised of five persons who are members and not parties to the proceeding; that said members of the trial court shall be selected by the members in the membership meeting of the local.

Under the evidence plaintiff was first tried by Local 3135 and was found guilty and fined $50.00. He exercised his right to appeal to Division 20. Because of the change in the structural organization of the CWA, CIO, which became effective April 2, 1951, and which abolished Division No. 20, the appeal was sent to the International Executive Board at Washington where the judgment was set aside and remanded to Local 6313. Thomas M. Wright filed charges on November 10, 1951, for the same offense and the cause was set for trial December 14, 1951.

Robinson et al. v. Nick, et al., supra, states the law in Missouri on page 387 of the opinion as follows:

"* * * It is no less true, however, that where the association has not acted strictly within the scope of its powers; * * * then the failure of the member to have availed himself of the remedies within the organization will not be a bar to his right to ask judicial interference. Hall v. Morrin, Mo. App., 293 S. W. 435, 440, and cases cited; 63 C. J. 689, 699; 7 C. J. S., Associations, Sec. 34."

Under the constitution and by-laws the charge against plaintiff had to be filed in writing with the secretary-treasurer of the local, which was done. Plaintiff was tried and a judgment of a fine of $50.00 was set. The evidence shows that plaintiff appealed as provided by the constitution and by-laws to Division No. 20; that the appeal was then transferred to the International Executive Board at Washington, D. C. Under the constitution of the union, the only judgment that the International Board could render was to review the case and affirm or reverse the decision. There was no provision for the remanding of the cause back to the local for re-trial under the remedies within the organization. We have set out the provisions of the constitution and by-laws of the union pertaining to the union's right to discipline its members. The scope of authority of the local union, under the constitution and by-laws, was limited to the filing of charges and the trial of plaintiff. This, it did and when the appeal was taken from the local union its duties were finished and it had no authority to, again, institute proceedings against plaintiff on the same cause. The final decision of the case rested in the bodies to which the cause was appealed. There was an additional appeal allowable to the convention only with power to review the case and affirm or reverse the decision or reduce the penalty.

We hold that under the law as declared in Missouri the Union has not acted strictly within the scope of its power; that local 6313 was without jurisdiction to, again, charge and try plaintiff on the same charge as was involved in his trial by local 3135. Under such circumstances plaintiff was entitled to seek relief in a court of equity.

From the evidence it is apparent that the trial afforded plaintiff by local 3135 on February 9, 1951, was not held in accordance with the constitution of the union. When the International Executive Board remanded the case to local No. 6313 it gave strict instructions that a fair trial should be granted plaintiff and that the constitutional methods of trial be followed. In the trial some of the witnesses were sworn and some were not. A proper record was not made. All of this leads the court to believe that there was bias and prejudice by those in charge of the trial against plaintiff. It would seem that a second trial, even though the same was voted by the members of the union, which would be tried by the same local union group, and by members of such union who had heard or participated in the first trial, would be no trial at all. The evidence shows that Ayres, the judge in the first trial, stated that the only question submitted to the local union was the question of whether or not Junkins was guilty. Ayers testified that the Executive Board of the International Union wanted Junkins' case re-tried.

We think the testimony is clear and convincing that the policy of the union under which plaintiff was tried was void, if there were such a policy, because it deprived plaintiff the rights accorded him under a contract between the company and the union and not only affected the rights of plaintiff but those of a third party, the company. Having so held we find that Local 3135 had no right to make such a charge against plaintiff under its constitution and by-laws. We find that because such charges were made against this plaintiff by members of the local and were not filed against other violaters of the same alleged policy, likewise, shows bias and prejudice and that the affairs of the association were not conducted fairly and honestly. We further find that the charge involved here was beyond the scope and powers of the union to file and an attempt to re-try plaintiff was fraudulent and oppressive and showed bad faith on the part of the union. The fact that they submitted the question to the members of the union as to whether or not plaintiff should be re-tried and had them vote on the question whether he was guilty or not guilty was highly prejudicial to plaintiff and the further fact that the same man who filed the first charge made the charge now under consideration and the same parties who heard the first trial and participated in it were to take part in the last trial, convinces us that a re-trial would be a vain and useless step under the remedies provided by the union. We find against defendants on this assignment.

1048

Defendants' allegation of errors numbered II and IV are covered in our opinion under allegations of error numbered I.

We agree with·defendants' contention under allegation of error numbered III, that the transition from the three-level to the two-level structure within the union was an administrative change and the same substantial labor organization continued in existence. Citizens Mutual Insurance Society v. Schoen, et al., Mo. App., 105 S. W. 2d 43; Wilson v. Kings Lake Drainage & Levee District, Mo. App., 165 S. W. 734.

Allegation of Error numbered V, relating to constitutional matters, is not within the jurisdiction of this court and was passed upon by the Supreme Court. Judgment affirmed. *Blair* and *Stone, JJ.,* concur.