**STATE of Missouri at the relation of Daniel O'BRIEN, Prosecuting Attorney, On the Information of Tillman Hardy, Informant and Relator,**

v.

**William PETRY, Jack Scatcherd, Carmen Rand, Ritchey Fay Calahan, Richard Coates, William Cohen, Joseph Rosel, Warren Burgess, and Charles Cromwell, Respondents.**

No. 31945.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1965.

Rehearing Denied Nov. 17, 1965.

Application to Transfer Denied
Jan. 10, 1966.

Joseph Langworthy, Pacific, for appellant-informant, Tillman Hardy.

Edward T. Wright, St. Louis, Theodore C. Traeger, Clayton, for respondents.

DOUGLAS W. GREENE, Special Judge.

This case is an action in quo warranto, and for a declaratory judgment, which was filed on September 10, 1962, in the Circuit Court of St. Louis County, in which action Tillman Hardy was the informant, and William Petry, Jack Scatcherd, Carmen Rand, Ritchey Calahan, Richard Coates, William Cohen, Joseph Rosel, Warren Burgess, and Charles Cromwell, were respondents.

The relevant facts are as follows: Informant had been a member of The Theatre Guild of Webster Groves, Missouri, for ten years. The Guild is a corporation organized under Chapter 352, V.A.M.S., and its function is to promote interest in the dramatic arts, and to produce dramatic and theatrical performances for the benefit and enjoyment of the general public in Webster Groves and the surrounding area.

The record does not reveal the criteria for becoming a member of this civic group, but does show that Section 8 of Article II of the By-Laws of the Guild provides that expulsion of members for reasons other than nonpayment of dues shall be a matter of discretion of the Board of Directors. Sec. 8, Art. II further provides that the Board may not act in any such case without notification, in writing, to the member, of the charges against him, and such notice is to inform him of a date for a closed session hearing. Only after such hearing, and after a vote of at least two-thirds of the whole Board assembled therefor, in favor of expulsion, shall the member be dropped.

Article IV of the Articles of Association provides that the Board shall consist of nine members, who are elected by the membership, from their own number. Article III of the By-Laws provides that Board members are elected at the annual meeting of the membership prior to March 15th, but their term of office does not begin until the following June 1st. Article IV of the By-Laws provides that no member shall be eligible for election or appointment to the Board who has not been a member in good standing for one full year next preceding his election or appointment.

On May 12, 1960, informant was working on the construction of a set for a play called "The Rainmaker." Without obtaining permission from the technical director, or production manager, of the play, informant made changes in the design, by painting portions of the set, the wall of the building, and part of the stage a different color than had been prescribed. To accomplish his purpose, he left the outside door unlocked, as he had no key to the building, and then returned to the building after the other workers had left. He also drilled holes in the ceiling tile in violation of orders from the Director and Production Manager. Informant was served with written notice directing him to appear before the Board of Directors on June 8, 1960, to answer charges preferred against informant by the Board, the substance of which charges are set out above. Informant appeared at the hearing and represented himself. He objected to the Board being his judges; asked for a jury trial; objected to the hearing not being public, and objected to the By-Laws providing for the hearing.

The president, in each instance, stated that the Board was complying with the By-Laws, specifically Article II, Section 8. Informant admitted the charges, and admitted he was wrong in re-entering the building, after leaving the door open the night before, and painting the set without authority. He was asked to conform to the wishes of the group, and was told that his actions, which were done without authority, caused inconvenience and unhappiness to the Guild. He assured the Board that if he was allowed to remain a member, he would not do anything in the future without consulting the person in charge. Informant was advised by the president that if there was any repetition of his individual actions without authority of the Guild, or its officers, there would be no question of his expulsion. A vote was taken and the vote was 7 to 1 against expulsion. Informant was told, and he considered he was on probation.

On March 11, 1962, informant was elected to the Board for a two-year term. His term of office was to begin June 1, 1962.

Some time after March 11th, but before April 4, 1962, informant was in charge of set construction for a play called "Autumn Garden." Gwen Springett was production manager, and Mr. William Petry was technical director. The production manager is responsible for set design, and the technical director is responsible for all technical production aspects of the play, including lighting, and is responsible for all equipment, including the equipment in the sound and light booth. The equipment kept there was valuable.

Without authority from Mr. Petry, informant had keys to the light and sound

booth made for his own use. Also, without authority from Gwen Springett, he completely changed one side of the set, and enlarged the other side. He did not consult with Gwen Springett before he did this. After he changed the set, he found that he had closed off access from one side of the stage to the other for the actors back stage, so he cut a hole through a main innerwall of the building that opened out onto a narrow nine or ten inch ledge over which the actors had to move to get to the other side of the stage. He also changed the lighting of the set by putting some lights behind the set. Mr. Petry had not given him authority to do this.

On April 4, 1962, Mr. Hardy was served with written notice to appear before the Board on that same evening at 8 P.M. to answer to the charge that he had altered the innerwall at the rear of the stage without proper authority.

The notice called attention to Section 8, Article II of the By-Laws, and set out the pertinent portions of said article, as previously stated. April 4th was evidently a regular meeting night, as Mr. Hardy was at the meeting. Although his term as a board member did not start until June 1st, he had authority to attend board meetings, but could not vote. He received the notice a few minutes before the meeting started. Informant was called before the board. He did not request a continuance, and presented his case. Informant admitted cutting the hole in the wall, and gave his reasons for doing so. The minutes of the meeting (Respondents' Exhibit A) indicate considerable discussion between the board and informant on the issue. After the discussion a ballot was taken and the board voted 6 to 1 to expel informant, the president abstaining. Informant was called in, and told of the board's decision. He remarked "This is not the end of it," which was a most prophetic statement. Informant continued to appear at Board meetings. He appeared on May 2, 1962, at which time he was given written notice of his expulsion. He

was asked to pick up his personal possessions, and he left. He appeared at a general meeting of the membership in May, and at another board meeting June 8th. He was asked to explain his presence. He said he had come to take his rightful place on the new board. He was advised again that he was not a member of the Guild or the Board. They refused to seat him on the Board, and after a heated discussion, informant left, saying they would hear from him again. To avoid further incidents and contacts with informant, the Board went underground, and met at times and places unknown to informant. He thereafter filed suit, on September 10, 1962, against respondents, asking that they be ousted from their offices for unlawfully using their offices as Board members (meeting without him), and asking for a declaratory judgment to construe the franchise, by-laws, and articles of association of the Theatre Guild of Webster Groves, and to declare whether or not informant was validly expelled from membership in the Guild. Informant, on January 10, 1964, requested the court to prepare a statement of the grounds for its decision, and to make findings of fact on any and all principal controverted fact issues. On February 10, 1964, the cause was heard in the Circuit Court of St. Louis County, and on April 1, 1964, a decree was entered which found the issues for defendants, and against the informant. The decree further recited that informant was afforded such due process as he requested, wanted, and was entitled to under all the circumstances; that informant was given notice of the meeting at which he was expelled, and that if the notice was inadequate the informant waived his right to object to this by his attendance at and participation in the meeting. The decree further found that the informant had been validly expelled, and was not legally a member of the Guild, nor a member of its Board of Directors, and that nothing in the franchise, By-Laws, nor Articles of Association of said Guild could be construed to the contrary. All costs were taxed against informant. No

separate findings of fact and conclusions of law were filed by the trial court.

Informant timely filed his motion for new trial alleging sixteen major errors on the part of the trial court. The trial court overruled said motion, and informant appealed to this court.

The issues raised by informant on appeal are many and diffuse. The case is not as complicated, however, as he would have us believe.

There are only four main issues in the case. First, did the trial court's decree contain sufficient findings of fact and conclusions of law to legally comply with informant's request for such findings, which request was filed prior to trial; second, was the informant given a proper and timely notice of the meeting at which he was expelled, and, if not, did he waive any defects in such notice by appearing at the hearing, and participating therein; third, did the board abuse its discretion in voting to expel informant as a member of the Guild, and, fourth, if informant was properly expelled as a member of the Guild, did he lose all of his rights as a member, including the right to serve on the Board of Directors.

As to the first issue, there is no dispute as to the relevant and material facts of the case. It is undisputed that Article II, Section 8, of the By-Laws of the Guild, provides that expulsion of members for reasons other than nonpayment of dues shall be a matter of discretion of the Board, provided that the Board may not act in such cases without notification in writing to the member of the charges against him, and which informs him of the date of a closed session hearing, and that after such hearing, and on a vote of at least two-thirds of the whole Board assembled for such purpose, the member may be expelled. It is not disputed that informant was given written notice of the charge against him, and that such notice was given to him about five minutes before the meeting began. It is not disputed that informant appeared at the hearing; that he did not ask for a continuance; that the charge against him was read to him, and he was given an opportunity to answer. It was undisputed that Gwen Springett was production manager of the play "Autumn Garden"; that she was in charge of set design for the play; that informant changed the design of the set without consulting with Miss Springett, and that he cut a hole in the rear innerwall of the building as part of the design change without any authority from her or anyone else, which incident was the charge he was tried on, according to the notice given him. It was not disputed that Article IV of the Articles of Association of the Guild provides that the Board of Directors shall consist of nine members, and that they shall be elected by the members from their own number. It was not disputed that the term of office of a board member elected in March does not begin until the following June 1st (Art. III of By-Laws), and that no member is eligible for election or appointment to the Board who has not been a member in good standing for one full year next preceding his appointment (Art. IV, Sec. 1 of By-Laws).

■ It is generally true that failure by the trial court, upon request made before trial of the case, to prepare a brief opinion containing a statement of the grounds for its decision and its findings on any principal controverted fact issues constitutes reversible error. Supreme Court Rule 73.01, V.A.M.R., Sec. 510.310, R.S.Mo.1959, V.A.M.S.; Clauson v. Tipton, Mo.App., 147 S.W.2d 148. In this case, however, there is no principal controverted fact issue. In such a situation no separate written finding of fact is necessary, or legally required. In re Helms Estate, Mo. App., 136 S.W.2d 427. If an express finding on any given subject was desired by informant, it was his duty to request it. In re Kellam's Estate, 227 Mo.App. 291, 53 S.W.2d 401. Informant made no such request, and is now in no position to complain.

As to the second issue, informant was given notice of the expulsion hearing. It cited Section 8 of Article II of the By-Laws, listed the time and date, and location when and where informant was to appear before the Board, and listed the charge against him. In response, informant did appear before the Board; was again advised of the charge; was given the opportunity to be heard, and was heard. The purpose of the law in requiring notice is that the party notified will have an opportunity to be heard. State ex rel. Murphy v. Aronson, Mo.App., 330 S.W.2d 140. Since informant was heard, and requested no additional time to present his case, we hold the notice was valid. The question of whether or not there was proper notice was a question of fact for the trial court, W. M. Crysler Co. v. Smith, Mo.App., 377 S.W.2d 134. The trial court decided that the notice given informant was proper. This decision, as all decisions by the trial court in cases of this type, will be upheld unless clearly erroneous. Lubrication Engineers, Inc., v. Parkinson, Mo.App., 341 S.W.2d 876. We find no error on the part of the trial court on this issue.

The third issue is, did the Board abuse its discretion in voting to expel informant.

The Theatre Guild, organized under Chapter 352, R.S.Mo.1959, V.A.M.S., had the right to provide in its By-Laws for the expulsion of members guilty of any offense which affects the interest of the group. Section 352.110, R.S.Mo.1959, V.A.M.S. It did so provide in Article II, Section 8, of the By-Laws. The record is crystal clear that the informant not only committed the offense with which he was charged, but committed many other acts which were against the wishes of many members of the Guild, and its officers. The Board had every right to expel informant on the basis of the submitted charge alone. The additional wrongful actions of informant, as listed in this opinion, in defiance of, or indifference to, proper authority, confirm the Board's action in expelling informant. As to the fourth issue, informant does not make a fair statement in his brief regarding the court's action when he states that the trial court erred in affirming informant's expulsion as a member of *the Board of Directors.* (Emphasis ours.) The court made no such finding. The decree stated specifically " * * * that the informant was validly expelled and is not now legally a member of said Guild, nor a member of its Board of Directors."

Informant was legally and validly expelled as a member of the Guild. Article IV of the Articles of Association of the Guild provides that the Board is made up of nine members. This could only mean members of the Guild. The same article further provides that Board members are to be elected by the members of the Guild from their own number. Article IV of the By-Laws provides that a board member must be a member of the Guild in good standing for a full year before his election.

It follows, as inescapably as night follows day, that if informant was legally expelled as a Guild member, he could not take or hold office as a Board member. To hold otherwise would strain judicial credulity past the breaking point.

While the courts will protect a member of an association against illegal expulsion, the field of judicial interference with the actions of voluntary associations as to controversies between their members over the method and manner in which the rights of membership may be maintained and terminated is and should be a very narrow one, and its boundary should be maintained with the utmost care, so that only upon the clearest kind of showing, that the constitution and rules are violated by the decisions of the tribunals set up by them should the courts permit their jurisdiction to be invoked. Junkins v. Local Union No. 6313, Communication Workers of America et al., 241 Mo.App. 1029, 271 S.W.2d 71, 1. c. 76.

There is no showing here that the Board's decision to expel informant violated such rules, or that informant was not granted a fair hearing, either before the Board, or the court below.

The judgment is affirmed.

WOLFE, P. J., and ANDERSON, J., concur.