Anthony J. WACHTER, Plaintiff-Appellant,

v.

Charles W. GROGAN, Desmond Lane, Robert Capps, Patrick Neary, Robert Cochran, Edward M. Fisher and August Mehrhoff, as Individuals, as Officers and Members of Highway & City Freight Drivers, Dockmen & Helpers, Local Union No. 600, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and as Representatives of a Class Consisting of the Entire Membership of Highway & City Freight Drivers, Dockmen & Helpers Local Union No. 600, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendants-Respondents.

No. 32268.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 12, 1966.

Application to Transfer Denied Feb. 13, 1967.

Susman, Willer, Rimmel & Elbert, by Harold I. Elbert, St. Louis, for appellant.

Harry H. Craig and Clyde E. Craig, Wiley, Craig, Armbruster & Wilburn, St. Louis, for respondents.

CLEMENS, Commissioner.

Plaintiff Anthony J. Wachter claimed that the defendant Union had maliciously expelled him. He sued the Union for actual and punitive damages, and the jury gave him a $12,700 verdict. On the Union's after-trial motion for judgment the trial court decided it did not have jurisdiction over the subject matter and entered judgment for the Union. Wachter appeals.

Here, the decisive issue is whether Wachter's claim comes within the Labor Management Relations Act—and, hence, within the exclusive jurisdiction of the National Labor Relations Board. That issue turns on whether Wachter's claim is based on an "unfair labor practice" under the Labor Management Relations Act or on an "internal union matter," to which the Labor Management Relations Act does not apply. The Union says, in effect: "Wachter claims the union interfered with his employment. That is an unfair labor practice, so jurisdiction is preempted by the federal government." Wachter retorts: "No, I'd already been fired when the union kicked me out, so my case concerns only me and my dealings with the union. Jurisdiction is in the circuit court."

Wachter's suit for wrongful expulsion deals with three earlier quasi-judicial proceedings within the Union framework. First, a labor-management grievance committee upheld Wachter's dismissal from his job at C. E. S. Truck Lines. Second, Wachter filed charges against defendant Charles W. Grogan seeking to oust him from the Union for Grogan's conduct in the grievance committee hearing. The Union exonerated Grogan. Third, Grogan filed charges against Wachter to oust him from the Union for Wachter's conduct in trying to oust Grogan. These charges were sustained and Wachter was ousted. But after two appeals by Wachter, the International Teamsters Union reversed his ouster and reinstated him to membership. Then, Wachter filed this action for damages arising from his wrongful expulsion. We will relate the verdict-consistent evidence on the background, each of the three hearings, and Wachter's damages.

Wachter was a ten-year member of the Union and drove a truck for the C. E. S. Truck Lines all that time. He was active in Union affairs—his fellow workers at C. E. S. elected him shop steward. In a Union election Wachter unsuccessfully supported an opponent of defendant Grogan for the Union's presidency. Soon after, Grogan proposed a change in the Union's bylaws to empower him, rather than employees, to select shop stewards. Wachter successfully opposed this change. After this meeting where Wachter had prevailed over Grogan, Wachter heard Grogan announce that the trouble with letting employees select their own shop stewards is that "we have nothing but god-damn bums like Tony Wachter who is down at C. E. S. and it would be better to get rid of them kind of people." The next day Wachter and Grogan talked: Grogan denied making the derogatory statement and both agreed to forget it.

A few months passed and then Wachter got into trouble with his employer. This eventually led to his discharge and the hearing before the labor-management grievance committee. From time to time Wachter's employer had warned him about violating company rules. Finally, Wachter got a warning letter from the C. E. S. president, Amos Govero, accusing Wachter of loading steel on top of a tarpaulin. During the noon hour on the next day Wachter and Govero met at the loading dock. They had an argument. Wachter demanded that Govero withdraw the warning letter, but Govero refused and ordered Wachter back to work; Wachter refused unless his business agent was present, and claimed that he was still on his lunch hour. Govero fired Wachter and sent him a confirming letter that did not comply with the company-union contract. At Wachter's request, Grogan as Union president protested the discharge and called for a hearing before a labor-management grievance committee to decide the dispute.

*The Grievance Committee Hearing.* The six-man committee had three representatives of management and three of labor, including defendants Grogan and Lane. After hearing evidence the committee accepted Govero's version of the dispute with Wachter and found that Wachter had wrongfully refused to go back to work. The committee unanimously upheld Wachter's discharge.

Wachter promptly wrote a critical letter to Harold Gibbons, president of the Teamsters Joint Council 13. He complained of the Union's handling of his grievance and told of Grogan's threat "to get rid of bums like Tony Wachter." He later sent a copy of the letter to Dave Beck, then president of the International Teamsters Union.

*The Wachter v. Grogan Union Hearing.* Wachter immediately filed charges against Grogan, urging that he be ousted from the Union. Wachter contended that Grogan had verbally abused him and that because of Grogan's prejudice against Wachter, Grogan had accepted the employer's version of the dispute rather than Wachter's version. These charges were heard and decided by the Union's executive board, a seven-man panel. Five of the panel members are defendants here and were fellow officers of Grogan; two were Union business representatives whom Grogan had appointed.

Wachter presented evidence by Union members about Grogan's statement that the Union would have to get rid of bums like Wachter. Wachter contended that the Union should have called his fellow employees as witnesses at the grievance committee hearing to support his version of the dispute with Govero. At this hearing before the executive board Wachter did call these men—and they supported Wachter's version of the dispute. In response, Grogan presented documents showing that Wachter's discharge was proper. Also, he denied the validity of Wachter's written complaints to Harold Gibbons and Dave Beck.

The Union executive board exonerated Grogan. It did not find that Wachter's

charges against Grogan were malicious. Five days later Grogan filed charges against Wachter.

*The Grogan v. Wachter Union Hearing.* Grogan struck back with charges to oust Wachter from the Union for Wachter's criticism of the Union and for his activities in the Wachter-Grogan ouster proceeding. Except for one substitution, the same seven-man panel of Union officers and business agents that had heard the Wachter-Grogan ouster proceeding now heard Grogan's complaint against Wachter. Grogan introduced the letters on Wachter's discharge by C. E. S., the grievance committee's finding upholding Wachter's discharge, and Wachter's letters to Gibbons and Beck. Grogan testified that Wachter could have got work and that he never came to the Union hiring hall. By testimony and argument Wachter denied Grogan's charges. The executive board found Wachter guilty of all charges and ordered him permanently expelled from the Union. Wachter first appealed to the Teamsters Joint Council 13, which upheld his expulsion, and then to the International Teamsters Union. There, the order of Wachter's expulsion was set aside and, almost three years later, he was reinstated in the Union "with any and all rights retroactive to the date of his expulsion."

Wachter stated at the first hearing, before the labor-management grievance committee, that he was being "kangaroo'd"; however, at both hearings before the executive board Wachter said he was satisfied with the way the hearings were conducted.

At the trial of this case Wachter testified to his damages. During the five-month period between his discharge from C. E. S. and his expulsion from the Union, Wachter got some work. Through what he called "the grapevine"—other union drivers and dockmen—Wachter got short-term jobs from five other truck lines, earning some $850. After his expulsion from the Union, Wachter did not go to the Union's hiring hall because of a sign there on the window, "For Members Only of Local 600." Although some non-Union members did get work through the hiring hall, Union members were sent out first—non-Union members got what was left over, if anything. Union membership is not essential to getting a job as a driver, but most truck terminals are unionized and membership is helpful. Wachter looked for work. He kept making job applications but got only four weeks' work from two truck lines, earning about $270.

Wachter owned a part interest in a tavern with his father-in-law, and during his 34-month expulsion Wachter worked at the tavern. When his Union membership was restored he went back to work as a truck driver. His net loss of earnings during his expulsion was over $6,000. Wachter's wife testified that after his expulsion he tried to get work and that "he just worried and didn't take no interest in anything."

Wachter submitted his case to the jury by modifying MAI 23.07. By this, the trial court told the jury to find for Wachter if:

"First: Defendants instigated a proceeding before the Executive Board of Local Union No. 600 of the Teamsters and caused plaintiff to be expelled from Local Union No. 600 of the Teamsters from February 15, 1956, to June 30, 1958, and

"Second: Said proceedings terminated in favor of plaintiff, and

"Third: In doing so, defendants acted maliciously and without reasonable grounds, and

"Fourth: Plaintiff was thereby damaged."

The term "maliciously" was defined by MAI 16.01; Wachter's actual damages were submitted by MAI 4.01. As said, the jury set Wachter's actual damages at $12,700. Judgment was entered for Wachter, but on the Union's after-trial motion for

judgment this was set aside. The trial court then entered judgment for the Union on the ground that the court had "no jurisdiction over the subject matter of plaintiff's petition because the exclusive jurisdiction of such matters is vested by Federal law in the National Labor Relations Board." On this appeal Wachter's only point is that his claim is based on an "internal union matter" outside the scope of the Labor Management Relations Act and, therefore, the trial court erred in disclaiming jurisdiction. The Union defends the trial court, reasoning: (a) Wachter claims that the Union interfered with his employment, (b) such interference is an "unfair labor practice" under the Labor Management Relations Act, and (c) exclusive jurisdiction is therefore with the National Labor Relations Board.

We deal first with Wachter's contention that his case is based on an internal union matter. Then we shall examine the Union's contention that the case is based on an unfair labor practice.

■ *Internal Union Matter?* The general scope of the Labor Management Relations Act embraces transactions between employers and labor unions and transactions between employers and unionized employees. The Act is not aimed at transactions between unions and their members.

■ Wachter pleaded and submitted that the Union had maliciously expelled him. He claimed that this wrongful conduct *resulted* in loss of earnings and mental anguish. In contending that the basis of his case is an internal union matter, Wachter relies principally on the case of International Assn. of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958). In *Gonzales* the California courts had not only allowed plaintiff damages for inability to find work, mental pain and suffering, and punitive damages, but had also ordered his reinstatement to union membership. In affirming this, the U. S. Supreme Court pointed out that membership in a labor union constitutes a contract between the member and the union, and that state law affords a remedy in damages when the contract is breached by wrongful expulsion. The Supreme Court upheld state jurisdiction, saying:

"* * * But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to § 8(b)(1) of the Act states that 'this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *.' [Citation] The present controversy is precisely one that gives legal efficacy under state law to the rules prescribed by a labor organization for 'retention of membership therein.'"

*Gonzales* does not stand alone. Other cases also hold that the doctrine of federal preemption does not attach to actions for damages resulting from loss of union membership. See International Union, United Automobile, etc., Workers v. Hinz, 6 Cir., 218 F.2d 664; Bussey v. Plumbers Local 3, 286 F.2d 165 (C.A. 10, 1961); Burns v. United Broth. of Carpenters, etc., Local 626, 204 F.Supp. 599 (U.S.D.C.Del., 1962).

Wachter also relies on Sipes v. Vaca, Mo. (banc), 397 S.W.2d 658, cert. granted, 384 U.S. 969, 86 S.Ct. 1863, 16 L.Ed.2d 680 (1966). There, the plaintiff was discharged from his job and protested his discharge. The defendant union refused to process his protest to the union's national arbitrator unless plaintiff paid defendant $300. Plaintiff refused, sued the defendant union, and got a $10,300 judgment. On appeal the defendant union, as here, contended that it was being charged with interference with the plaintiff's employment and, therefore, an unfair labor practice was at issue; hence, exclusive jurisdiction was in the federal government. In denying federal juris-

diction the Missouri Supreme Court relied on *Gonzales,* saying:

" * * * the real complaint of Gonzales was his inability to obtain employment *because* of his expulsion from union membership. We see no difference in that situation and the situation in the instant case. We are dealing with an *internal union matter* in that [plaintiff] complained of the refusal of the union to fully process his grievance. He, like Gonzales, hoped that as a result of proper union action he would be restored to his employment. If Gonzales involved a purely internal union matter then the case at bar involves a purely internal union matter. The *Gonzales* case is clearly applicable here and is ample authority for our conclusion that jurisdiction of the subject matter of this case has not been preempted by the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq." (Our emphasis.)

Here, the issue was even more an internal union matter than in the Sipes case. There, the plaintiff was trying to compel his employer to rehire him. He claimed that his union had maliciously failed to protect his right to that continued employment. Here, Wachter was out of work when the Union wrongfully expelled him. Loss of employment elsewhere was the result of the Union's wrongful conduct and entered the case merely as one of the elements of Wachter's damages. We hold that Wachter's cause of action concerned an internal union matter.

In reaching this conclusion we have examined the Union's criticism of the Gonzales and Sipes cases. The Union points out that in *Gonzales* the focus of plaintiff's action was on reinstatement to union membership, not on damages. That does not lessen the force of *Gonzales,* where the state court granted both restoration and damages for expulsion. If a state court has jurisdiction to do both, it has jurisdiction to do either. The Union also tries to distinguish the Missouri Supreme Court's

holding in the Sipes case. The Union says the plaintiff there "was not complaining of discrimination with regard to his employment opportunities." Neither is Wachter. Just as in the Sipes case, plaintiff Wachter complains that the Union breached an internal union duty and that the breach *caused* his damage by loss of employment. The Union's criticism of the Gonzales and Sipes cases is unsound. Both cases apply here.

■ *Unfair Labor Practice?* The Union relies on the cases of Plumbers' Local 100 v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638, and Local No. 207, Iron Workers Union v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646. In each case the union activity was held to be an unfair labor practice, and the doctrine of federal preemption was applied. In the Borden case the plaintiff held union membership but the union refused to refer him for employment. In the Perko case the union caused the plaintiff to be fired. In each case federal preemption applied because the case focused directly on the defendant union's activities in interfering with the plaintiff's employment, rather than on the plaintiff's union membership as here and in *Gonzales.* In Sipes v. Vaca, supra, at 397 S.W.2d l. c. 663–664, the Borden and Perko cases were distinguished and held inapplicable. We reach the same conclusion.

To support its theory of federal preemption, the Union quotes the Missouri Supreme Court's statement in Cook v. Brotherhood of Sleeping Car Porters, Mo., 309 S.W.2d 579, l. c. 586: "It is apparent that Congress has left only a minimum of responsibility (and jurisdiction) to the courts, State or Federal, in the field of railway labor relations." Also, the Union insists that this case is "arguably" within the scope of the Labor Management Relations Act and that is enough to divest state courts of jurisdiction. The word "arguably" was used to construe the Act in San Diego, Building Trades Council v. Garmon,

359 U.S. 236, 1. c. 245, 79 S.Ct. 773, 3 L.Ed.2d 775. That case was one for damages for picketing brought by an employer against a union, "a tort based on an unfair labor practice," wholly unlike the case before us. The word "arguably" was used by the Supreme Court to apply the "Delphic nature" of the jurisdictional limitations of the Act. In contrast to this "arguably" contention, the same decision said at 1. c. 243, 79 S.Ct. 1. c. 779 that there was no preemption where the questioned activity was "a merely peripheral concern of the Labor Management Relations Act." These cases, and others cited by the Union, contain abstract statements that give superficial support to its contention of preemption. But not one is remotely similar to the case before us, where the issue is one of damages arising from the wrongful expulsion from a union. *Gonzales* was just that kind of case.

The assertion of an unfair labor practice was advanced by the defendant union in *Gonzales*. At 356 U.S. 1. c. 619–620, 78 S.Ct. 1. c. 925, the Supreme Court conceded that in such a suit there might be "embedded circumstances that would constitute an unfair labor practice," and that by "wooden logic" it might be said that expelling a member from a union might cause an employer to discriminate against an employee. But the Court cast aside that argument, saying: "But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied."

We hold that our case is based on an internal union matter, not on an unfair labor practice. It is therefore outside the doctrine of federal preemption, and the trial court did have jurisdiction. This requires a reversal of the trial court's order setting aside Wachter's verdict and judgment. It does not fully dispose of the appeal.

█ As mentioned, the trial court denied the Union's motion for a new trial. In the respondents' brief the Union now raises two points. Although the Union did not appeal (naturally!), points raised below in the Union's motion for new trial and properly briefed here are reviewable. In Hughes v. St. Louis Nat'l League Baseball Club, 359 Mo. 993 (banc), 224 S.W.2d 989 [4, 5], the court said: "* * * when, as here, the motion to set aside is sustained and the motion for new trial overruled * * * and the plaintiff appeals from the judgment entered against him, then the defendant may in his brief allege error in instructions or other procedural matters raised in his motion for new trial."

█ In the first of these "Points Relied On" the Union says: "Plaintiff failed to prove the essential elements of his cause of action which was in the nature of an action for malicious prosecution. * * * Plaintiff has failed to prove the essential elements of his cause of action." The Union's first point must fail, for two reasons. It is a mere abstract assertion: it does not state *what* essential elements were not proved. Such a sweeping challenge to the sufficiency of a plaintiff's evidence does not comply with Civil Rule 83.05(e), V.A.M.R., and presents nothing for review. See Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11[3] (where the point raised said that the plaintiff failed to prove facts upon which relief could be granted), and State ex rel. P. W. Finger Roofing Co. v. Koch, Mo.App., 272 S.W.2d 22[3] (where appellant charged only that the verdict was not supported by the evidence). Next, even if we consider the words "in the nature of an action for malicious prosecution" as a specific point of error, we are confronted with a point raised for the first time on appeal. In the argument section of the brief the Union lays out the elements of an action for malicious prosecution and then argues in detail that Wachter's evidence did not prove all those elements. Wachter did not contend below and does not contend here that his action is one for malicious prosecution. Instead, plaintiff's

claim is based on the theory that he was maliciously expelled from membership in the Union. The Union's after-trial motion did not give the trial court an opportunity to rule on whether Wachter had to or did prove each element of a case of malicious prosecution. The motion complained of Wachter's verdict-directing instruction only in general terms, saying: " * * * it misinformed the Jury as to what facts will suffice under the law for a verdict * *." The malicious prosecution theory was not mentioned. Being raised here for the first time, the point is not preserved for review. "We are precluded from considering any allegations of error which have not been presented to or decided by the trial court." Georg v. Koenig, Mo., 370 S.W.2d 356 [3, 4].

■■■■ We have not overlooked the fact that Wachter submitted his case by modifying MAI 23.07, an instruction designed to submit a malicious prosecution case. By doing so, Wachter took on a heavier burden than needed to make a case for wrongful expulsion from the Union. (As to elements of recovery for wrongful expulsion, see Mullen v. Seegers, 220 Mo.App. 847, 294 S.W. 745 [2, 3]; Junkins v. Local Union No. 6313, Communication Workers, 241 Mo.App. 1029, 271 S.W.2d 71[15, 17]; Hall v. Morrin, Mo.App., 293 S.W. 435[7]; 21 A.L.R.2d 1397, § 11; 74 A.L.R.2d 783, § 2.) This instruction was harmless to the Union. However, our ruling is based on the ground that the Union's point presents nothing for review.

■■■ In the second of these "Points Relied On" the Union briefs a point on the admission of evidence. At the trial the court admitted the Union's records of the proceedings against Wachter and, also, the transcripts of the Wachter v. Grogan and the Grogan v. Wachter hearings. These were not admitted as substantive evidence of the facts testified to therein, but for the limited purpose of showing whether Wachter's expulsion was malicious. At least

twelve times the Union objected to admission of the transcripts, asserting nine different grounds. The Union's brief, without making page references to the transcript, now *argues* three of these grounds: (a) that two of the hearing witnesses were present at the trial, (b) that the Union was denied the right to cross-examine the witnesses, and (c) that, generally, the transcripts were hearsay.

Civil Rule 83.05(e), V.A.M.S., says: "The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed * * *." In its "Points Relied On," the Union says: "The Trial Court erred in admitting into evidence and allowing to be read to the jury the transcripts of proceedings before the union's executive board involving intra-union charges." The point ignores the rule. As said, the Union made and the trial court ruled on a dozen objections asserting nine different grounds. The Union's brief informs neither Wachter's counsel nor this court *what* rulings were wrong or *why* the trial court erred. Having failed to comply with the rule, the Union has preserved nothing for review.

The judgment for the defendant Union is reversed and the cause is remanded for reinstatement of the verdict and original judgment for plaintiff Wachter.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment for the defendant Union is reversed and the cause is remanded for reinstatement of the verdict and original judgment for plaintiff Anthony J. Wachter.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.